**Michael Austin JENKINS, Appellant,**

**v.**

**Bee Lyn JENKINS and Harry Cure, Bankruptcy Trustee of the Estate of Bee Jenkins, Appellees.**

**No. 2–98–158–CV.**

Court of Appeals of Texas, Fort Worth.

April 22, 1999.

Rehearing Overruled May 27, 1999.

---

Newman and Davenport, P.C., J. Kent Davenport, Dallas, for Appellant.

Loe, Warren, Rosenfield, Kaitcher & Hibbs, P.C., Jeffery N. Kaitcer, Fort Worth, for Appellee.

Panel B: DAUPHINOT, BRIGHAM, and HOLMAN, JJ.

## OPINION

WILLIAM BRIGHAM, Justice.

### Introduction

Michael Austin Jenkins appeals from the trial court's order awarding the trustee of his ex-wife's bankruptcy estate certain alimony payments under an agreement incident to divorce (AID), and also awarding the trustee and Michael's ex-wife attorney's fees. We affirm in part and reverse and remand in part.

Michael and Bee Jenkins were divorced in November 1992. They both signed an AID, under which Michael agreed to pay Bee $2000 per month contractual alimony, beginning on November 16, 1992 and continuing on the first and sixteenth days of each month thereafter until $144,000 was paid. Bee agreed to report the alimony payments as income for federal income tax purposes. The parties further agreed that, if Bee failed to list the alimony payments as income for tax purposes, Michael's obligation to make the payments would be suspended until Bee included the payments as income.

Michael stopped making the alimony payments in June 1993, although he paid $6,000 in 1995. Bee filed bankruptcy on June 2, 1993, and Harry Cure (the Trustee) was appointed trustee for Bee's bankruptcy estate.

In November 1994, Michael filed a motion to clarify and enforce his and Bee's divorce decree. On July 19, 1995, the Trustee intervened in that proceeding and moved to enforce the AID, seeking the alimony payments that Michael had not made. In 1996, Bee filed a counterclaim against Michael regarding certain items of personal property.

After a trial on the merits of all these claims, the trial court rendered judgment:

- awarding the Trustee $107,000 in past due alimony payments, less a $28,000 offset to Michael for damage Bee did to Michael's home;

- awarding the Trustee an additional $17,000 in future alimony payments because of Michael's anticipatory repudiation of the AID;

- awarding the Trustee attorney's fees;

- denying Michael's motion for clarification and enforcement; and

- denying Bee's counterclaim but awarding her attorney's fees.

Michael raises 21 points on appeal, in which he complains:

- the trial court erred by awarding the Trustee most of the $107,000 in past due alimony payments, because most of those payments were not property of Bee's bankruptcy estate;

- the trial court erred by concluding that the Trustee was not barred by limitations from collecting any alimony payments owed before July 19, 1993;

- the trial court's award of the alimony payments to the Trustee is not supported by sufficient evidence;

- the trial court improperly awarded the Trustee future alimony payments based on Michael's alleged anticipatory repudiation of the AID;

- the trial court erred by denying Michael's request for a trial amendment concerning his offsetting damages; and

- the trial court improperly awarded the Trustee and Bee attorney's fees.

### Trustee's Capacity to Recover Past–Due Alimony Payments

In points 3 through 7, Michael contends that the Trustee had no "standing" or right to recover most of the past-due alimony payments because they were not part of Bee's bankruptcy estate. The Trustee asserts that this argument is a complaint that the Trustee lacked *capacity* to sue Michael for all the alimony owed to Bee. Because Michael never raised a lack of capacity argument in a verified pleading, the Trustee contends Michael's complaint is waived.

■ We believe Michael is making a lack of capacity argument. Capacity is a person's legal authority to act, regardless of whether the individual has a justiciable interest in the controversy. *See Nootsie, Ltd. v. Williamson County Appraisal*

*Dist.*, 925 S.W.2d 659, 661 (Tex.1996). When a defendant challenges a plaintiff's legal right to bring suit, this is a challenge to capacity. *See Pledger v. Schoellkopf*, 762 S.W.2d 145, 146 (Tex.1988); *Davis v. City of Houston*, 869 S.W.2d 493, 494 n. 1 (Tex.App.—Houston [1st Dist.] 1993, writ denied). In contrast, the issue of standing concerns whether the plaintiff was personally aggrieved and therefore has a justiciable interest in the controversy. *See Nootsie, Ltd.*, 925 S.W.2d at 661; *Davis*, 869 S.W.2d at 494 n. 1.

■ In this case, Michael contends that the Trustee had the right to sue for only part of the past-due alimony payments— those that were owed to Bee within 180 days of the time she filed her bankruptcy petition. Michael contends that the Trustee had no authority to sue for alimony payments that became due more than 180 days after Bee filed bankruptcy, because those payments were not part of the bankruptcy estate. Thus, Michael is arguing that the Trustee had no legal right—i.e., no capacity—to sue Michael for property that was not part of the bankruptcy estate. *See Graves v. Diehl*, 958 S.W.2d 468, 470 n. 2 (Tex.App.—Houston [14th Dist.] 1997, no writ) (explaining that appellant challenged appellee's capacity to sue by complaining that appellee lacked sufficient legal interest in subject property to bring suit).

■ Michael complained in the trial court that the Trustee had no "legal right" to sue for alimony payments that were not part of Bee's bankruptcy estate. Even if this was an argument that the Trustee lacked capacity to sue, Michael's pleading was not verified. "When capacity is contested, Rule 93(2) requires that a verified plea be filed anytime the record does not affirmatively demonstrate the plaintiff's ... right to bring suit ... in *whatever* capacity he is suing." *Pledger*, 762 S.W.2d at 146; *see also* Tex.R. Civ. P. 93(2). A party who fails to raise capacity through a verified plea waives that issue at trial and on appeal. *See Nine Greenway Ltd. v.*

*Heard, Goggan, Blair & Williams*, 875 S.W.2d 784, 787 (Tex.App.—Houston [1st Dist.] 1994, writ denied); *see also Rodriguez v. Texas Dep't of Human Servs.*, 737 S.W.2d 25, 28 (Tex.App.—El Paso 1987, no writ) (holding that complaints in unverified motion to dismiss challenging plaintiff's authority to bring suit were waived on appeal because motion was not verified, as required by rule 93). We overrule points 3 through 7.

### Statute of Limitations

Although Michael stopped making alimony payments on June 1, 1993, the Trustee did not move to enforce the AID until July 19, 1995. In points 14 and 15, Michael complains that the trial court erred by concluding that the Trustee was not barred by limitations from collecting any alimony payments owed before July 19, 1993.

■ The family code provides that a motion to enforce the division of future property not in existence at the time of the original decree must be filed within two years after the right to the property matures or accrues or after the decree becomes final, whichever is later, or the suit is barred. *See* Tex. Fam.Code Ann. § 9.003(b) (Vernon 1998);[1] *Ex parte Goad*, 690 S.W.2d 894, 896 (Tex.1985). However, the family code also allows a party who does not receive payments of money awarded in a divorce decree to sue the defaulting party for a money judgment in the amount of the unpaid payments.[2] This remedy of reduction to a money judgment

is in addition to the other remedies provided by law.[3] *See Bowden v. Knowlton*, 734 S.W.2d 206, 207–08 (Tex.App.—Houston [1st Dist.] 1987, no writ).

■ The parties' AID was approved by the court and incorporated into their divorce decree; thus, the AID was enforceable as part of the decree. *See* Tex. Fam. Code Ann. § 7.006(b) (Vernon 1998) (providing that terms of AID approved by trial court are binding on court and may be incorporated into divorce decree);[4] *McCray v. McCray*, 584 S.W.2d 279, 280–81 (Tex.1979) (holding that contractual alimony agreement approved by trial court in divorce decree was enforceable as part of decree); *Chess v. Chess*, 627 S.W.2d 513, 515 (Tex.App.—Corpus Christi 1982, no writ) (holding that property settlement agreement incorporated into divorce decree is binding as final judgment). But section 9.003(b)'s two-year statute of limitations does not apply to this case because the Trustee did not seek to compel a *division* of property via his motion to enforce.[5] A division of property was unnecessary, because the divorce decree awarded Bee a specific amount of alimony. The Trustee merely sought a money judgment for alimony awarded but not paid, plus additional money damages for Michael's alleged repudiation of the AID. Because the Trustee sought a reduction of the specific monetary award in the AID to judgment, rather than a division of property, the Trustee's claim is not governed by section 9.003(b).

1. For the version of this statute in effect when the underlying suit was filed, see Act of May 30, 1983, 68th Leg., R.S., ch. 424, § 2, 1983 Tex. Gen. Laws 2350, 2350 (current version at Tex. Fam.Code Ann. § 9.003(b)). Because the statute was recodified without substantive change, we refer to it as section 9.003(b) in this opinion.

2. *See* Act of May 30, 1983, 68th Leg., R.S., ch. 424, § 2, 1983 Tex. Gen. Laws 2350, 2352 (current version at Tex. Fam.Code Ann. § 9.010(b) (Vernon 1998)).

3. *See id.*

4. For the version of this statute in effect when the parties were divorced in 1992, see Act of May 31, 1981, 67th Leg., R.S., ch. 712, § 2, 1981 Tex. Gen. Laws 2656, 2656–57 (current version at Tex. Fam.Code Ann. § 7.006(b)). Because the statute was recodified without substantive change, we refer to it as section 7.006(b).

5. Our disposition of Michael's points regarding the statute of limitations does not require us to reach the issue of whether the alimony payments were "future" property.

This case is analogous to *Bowden,* in which the appellant was awarded a specific amount of money in the divorce decree and later sued to enforce it. The First Court of Appeals held that the two-year statute of limitations did not apply to the appellant's claim because she sought to reduce a monetary award to judgment, not the division of property. 734 S.W.2d at 207–08.

Michael's reliance on *Goad* is misplaced. The divorce decree in *Goad* did not award the appellee a specific money amount that she later sought to reduce to judgment. Instead, the decree awarded the appellee $^{12}\!/_{27}$ of the appellant's future retirement benefits. 690 S.W.2d at 895. When the appellant retired but refused to divide his retirement benefits as ordered in the divorce decree, the appellee filed a contempt proceeding. Because the appellee sought to enforce a division of future property, the Texas Supreme Court held that the two-year statute of limitations applied. *Id.* at 896.[6] We overrule points 14 and 15.

### Michael's Obligation to Make Alimony Payments

■ In points 1 and 2, Michael complains that the trial court improperly awarded the Trustee back alimony payments based on Michael's breach of the AID. Michael asserts that his obligation to make alimony payments under the AID was suspended by Bee's failure to report the payments that *were* made on her federal income tax returns. The AID provides, in pertinent part:

#### 5.05 Intended Tax Impact

Pursuant to section 71 of the [Internal Revenue] Code, all the alimony payments made under this article shall be includable as income on Receiving Party's income tax returns beginning in calendar year 1992. In addition, such pay-

ments shall be deductible on Paying Party's income tax returns pursuant to section 215 of the Code beginning in the same calendar year.

. . . Receiving Party agrees to furnish written assurance signed by that party and by any tax return preparer that payments made pursuant to this article have been included as income in Receiving [P]arty's federal income tax return for the applicable year. The written assurance will be given at the time the federal income tax return is filed.

. . . .

If Receiving Party fails and refuses to include the alimony payments in that party's gross income, Paying Party's obligations to make the payments will be suspended until all the amounts paid have been included in Receiving Party's gross income, at which time the payments will be resumed and Paying Party will immediately pay any amounts held in suspense.

Michael made some payments to Bee in 1992 and January 1993. Michael then stopped making payments to Bee, although he did send $8,000 to the Trustee's attorney in June 1993, after Bee filed bankruptcy, and another $6,000 in January 1995. Michael contends it is "undisputed" that Bee never reported those payments on her federal income tax returns; thus, his obligation to make additional alimony payments was suspended until Bee reported the payments. Due to Bee's alleged failure to report, Michael asserts he had no "current obligation" at the time of trial to make further payments to Bee.

Michael admitted at trial, however, that he did not know whether Bee had reported the alimony payments on her income tax returns, although it had been "indicated" to him that she had. Indeed, the fact that

6. We disagree with *Gonzales v. Gonzales,* 728 S.W.2d 446 (Tex.App.—San Antonio 1987, no writ). That case also involved the award of a specific money amount in a divorce decree, and the San Antonio Court of Appeals held that the two-year statute of limitations ap-

plied. *Id.* at 447. To reach this result, the court read *Goad* as indicating that the two-year limitations period applied to all suits to enforce property awards in divorce decrees. *Id.* at 447 n. 1. We do not read *Goad* or section 9.003(b) this broadly.

Michael paid $6,000 in January 1995 is some evidence that he believed his obligation under the AID had not been suspended, i.e., that Bee had reported the payments. Michael further admitted that he stopped making the alimony payments because of financial difficulties and because Bee "wouldn't give me any of my things back." On appeal, Michael states that he stopped making the alimony payments because Bee destroyed his house. None of these alleged reasons relieves Michael from his contractual responsibility to make the alimony payments.

Moreover, Bee testified that she believed her accountant had filed an amended tax return, which reported any alimony payments that Michael had made. Michael also indicated that he had deducted the alimony payments from his income on his tax return, and the IRS had not notified him of any problem concerning the alimony payments.

This evidence shows that Michael stopped making alimony payments to Bee before he had any knowledge of whether she was "failing and refusing" to include the payments in her taxable income. Thus, the evidence is sufficient to support the trial court's conclusion that Michael had breached the AID and therefore owed Bee the unpaid alimony payments that had accrued through the time of trial.[7] We overrule points 1 and 2.

### Anticipatory Repudiation

In points 8 and 9, Michael complains that the trial court erred by awarding the Trustee damages based on anticipatory repudiation because there was no evidence that Michael repudiated the contract, and there was no evidence of the present value of the future alimony payments.

In determining a "no-evidence" point, we are to consider all of the evidence in the light most favorable to the party in whose favor the judgment has been rendered, and to indulge every reasonable inference from the evidence in that party's favor. See Formosa Plastics Corp. v. Presidio Eng'rs & Contractors, Inc., 960 S.W.2d 41, 48 (Tex.1998); Merrell Dow Pharm., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex.1997), cert. denied, —— U.S. ——, 118 S.Ct. 1799, 140 L.Ed.2d 939 (1998); In re King's Estate, 150 Tex. 662, 244 S.W.2d 660, 661 (1951). If there is more than a scintilla of such evidence to support the finding, the claim is sufficient as a matter of law, and any challenges go merely to the weight to be accorded the evidence. See Formosa Plastics Corp., 960 S.W.2d at 48; Leitch v. Hornsby, 935 S.W.2d 114, 118 (Tex.1996).

■ When a party who is contractually obligated to make future payments of money to another repudiates the obligation without just excuse, the obligee is entitled to damages for the present value of the future payments due under the contract. See Taylor Pub. Co. v. Systems Mktg. Inc., 686 S.W.2d 213, 217 (Tex.App.—Dallas 1984, writ ref'd n.r.e.). Repudiation consists of words or actions by a contracting party that indicate he is not going to perform his contract in the future. See Chavez v. Chavez, 577 S.W.2d 306, 307 (Tex. Civ.App.—El Paso 1979, writ ref'd n.r.e.) It is conduct that shows a fixed intention to abandon, renounce, and refuse to perform the contract. See Hubble v. Lone Star Contracting Corp., 883 S.W.2d 379, 382 (Tex.App.—Fort Worth 1994, writ denied). But there is no repudiation if the refusal to perform is based upon a genuine mistake or misunderstanding as to matters of fact or law. See McKenzie v. Farr, 541 S.W.2d 879, 882 (Tex.Civ.App.—Beaumont 1976, writ ref'd n.r.e.).

■ In this case, Michael acknowledged at trial that he had failed to pay $107,000 in alimony payments since June

---

7. In its findings of fact, the trial court found that "the material allegations" contained in the Trustee's motion to enforce were true. The Trustee's material allegations were breach and anticipatory repudiation of the AID by Michael. We address anticipatory repudiation in the next section.

1993. Michael admitted that, between June 1993 and the time of trial (February 1998), he had only paid $6,000 in alimony payments. The $6,000 was paid in January 1995, before the Trustee moved to enforce the AID and over three years before trial. When asked whether he intended to make future alimony payments, he responded, "I don't know the answer to that."

This is more than a scintilla of evidence that Michael did not intend to perform under the AID in the future. Accordingly, the trial court did not err by concluding that Michael had repudiated the contract.

■■■■ Because Michael had repudiated the contract as to future payments, the trial court should have awarded the Trustee the present value of all the alimony payments Michael would have made if the contract had been performed. *See Republic Bankers Life Ins. Co. v. Jaeger,* 551 S.W.2d 30, 31 (Tex.1976). Trial was held on February 5, 1998. The evidence showed that, at that time, Michael owed future payments through November 1, 1998. Because the AID required Michael to pay $1,000 on the first and sixteenth day of each month from February 5 through November 1, 1998, Michael was liable for $18,000 in future alimony payments, discounted to their present value on February 5, 1998. The trial court awarded the Trustee $17,000 in future alimony payments.

■■■■ Michael complains that no evidence was offered on the present value of the future alimony payments. In Texas, however, specific evidence of the present value discount rate is not required, and the trial court may determine the present value of future damages. *See Taylor Pub. Co.,* 686 S.W.2d at 217. Michael does not direct us to any place in the record where he objected to the discount rate applied by the trial court, or objected that the trial court had miscalculated the present value of the future alimony payments. Therefore, he has waived this complaint on appeal. *See* Tex.R.App. P. 33.1(a). We overrule points 8 and 9.

## Trial Amendment

In points 10 through 13, Michael contends the trial court improperly denied him a trial amendment as to the amount of damages he was claiming as an offset against the past-due alimony payments. Two weeks before trial, Michael amended his pleadings to seek an offset of $28,732.40 against the Trustee's claim for past-due alimony. The offset was for damages Bee allegedly owed Michael for "tearing up and damaging his house." The trial court awarded Michael an offset of $28,000, but Michael asserts he was entitled to an offset of $106,500.

During trial, Michael sought to amend the amount of his damages to $106,500: (1) $70,000 for loss of value to his house; (2) $30,000 for loss of his personal property that Bee allegedly took; and (3) $6,500 for loss of his business property that Bee allegedly took. The trial court sustained the Trustee's objections to the amendment and refused to allow it.

■■■■ Texas Rules of Civil Procedure 63 and 66 mandate that a trial court grant leave to file a trial amendment unless: (1) the opposing party presents evidence of surprise or prejudice; or (2) the amendment asserts a new cause of action or defense, and is thus prejudicial on its face, and the opposing party objects to the amendment. *See Chapin & Chapin, Inc. v. Texas Sand & Gravel Co.,* 844 S.W.2d 664, 665 (Tex.1992); *Greenhalgh v. Service Lloyds Ins. Co.,* 787 S.W.2d 938, 939–40 (Tex.1990). The burden of showing prejudice or surprise rests on the party resisting the amendment. *See Greenhalgh,* 787 S.W.2d at 939–40. Michael's requested amendment was not based on a new cause of action or defense, and the Trustee did not establish prejudice or surprise.

### *Loss of Value to Michael's House*

The only evidence Michael offered to prove the loss of value to his house was his

own testimony that he had an offer of $300,000 on the house until the prospective buyer saw the damage that Bee had allegedly done to the inside. According to Michael, after the buyer saw the damage, the home sold for only $230,000. The Trustee objected that this evidence was based on hearsay and that Michael's opinion on the value of the house was inadmissible. The trial court sustained the objection, and Michael did not offer any other evidence concerning loss of value.

Later, Michael sought to amend his pleadings to reflect a $70,000 loss of value to his house. The trial court refused to allow the trial amendment on the basis that it was outside the scope of Michael's pleadings. Although the trial court articulated the wrong reason for its ruling, we question whether the ruling was erroneous; there was no competent evidence to support a trial amendment as to loss of value. *See Beneficial Personnel Servs. v. Porras,* 927 S.W.2d 177, 183 (Tex.App.—El Paso 1996) (noting that trial court has discretion to allow amendment so pleadings will conform to *evidence* adduced at trial), *writ granted w.r.m,* 938 S.W.2d 716 (Tex.1997). Even assuming the ruling was improper, the error is not reversible unless it probably caused the rendition of an improper judgment or prevented Michael from presenting his case on appeal. *See* Tex.R.App. P. 44.1(a); *Chambless v. Barry Robinson Farm Supply, Inc.,* 667 S.W.2d 598, 601 (Tex.App.—Dallas 1984, writ ref'd n.r.e.).

In this case, Michael was not prevented from presenting his case on appeal; he did not attempt to put on any competent evidence or make an offer of proof concerning the alleged loss of value to his house. Further, the ruling did not cause the rendition of an improper judgment, because there is no evidence that would support the loss-of-value damages Michael seeks.

### Loss of Michael's Personal and Business Property

In his motion to clarify and enforce his and Bee's divorce decree, Michael asked the trial court to order Bee to deliver certain items of personal and business property to Michael or, in the alternative, to render a money judgment against Bee for Michael's damages caused by Bee's failure to deliver the personal property. Michael presented evidence at trial that Bee had not delivered these items to him, and he relied on this evidence in seeking the trial amendment for $30,000 for loss of his personal property and $6,500 for loss of his business property.

The Trustee objected to a trial amendment based on this evidence, and he also objected to admission of the evidence itself for purposes of Michael's claims against the Trustee. We hold that the trial court erred by refusing to allow Michael to amend his pleadings to reflect the alleged loss of personal and business property. The Trustee did not establish that prejudice or surprise would result from the amendment.

Nonetheless, the improper ruling did not prevent Michael from properly presenting his case on appeal. Bee's attorney affirmatively stated that he did not object to admission of the evidence, and the trial court admitted the evidence for purposes of Michael's claims against Bee. Thus, evidence of Michael's alleged personal and business property loss is before us. The record also shows that Bee testified she did not have most of the items that Michael sought, and that she did not give them away or sell them. Bee testified that Michael had some of the items in his home. At the close of the evidence, the trial court denied Michael any relief against Bee, and Michael does not appeal that ruling.

If Michael could not recover on his claims against Bee for loss of personal and business property, he also was not entitled to offset the amount of those alleged losses against the Trustee's claims for the past-due alimony payments. Accordingly, the trial court's refusal to allow the trial

amendment did not result in the rendition of an improper judgment. We overrule points 10 through 13.

## Attorney's Fees

■ In point 17, Michael complains that the trial court improperly awarded Bee attorney's fees because Bee did not prevail on any of her claims against Michael. In point 16, Michael contends there is no evidence to support the award.

■ The family code provides that a trial court "may award reasonable attorney's fees as costs in a proceeding under this subchapter." TEX. FAM.CODE ANN. § 9.014 (Vernon 1998). The statute does not require Bee to have "prevailed" on her claims against Michael; it simply requires the fee award to be reasonable under the circumstances of this case. However, when a trial court awards attorney's fees to the nonprevailing party in a family law matter, the court must state on the record or in its judgment the good cause substantiating the award. *See Marichal v. Marichal,* 832 S.W.2d 797, 798 (Tex.App.— Houston [14 th Dist.] 1992, no writ). The trial court did not give any reasons for awarding Bee attorney's fees. We sustain point 17. In light of our holding, we need not consider point 16.

■ In points 18 through 21, Michael asserts that the trial court erred in awarding the Trustee attorney's fees at trial and on appeal. Michael does not brief any of these points. He does contend that the Trustee was not entitled to attorney's fees on *appeal* because he did not plead for them, and Michael objected to this lack of pleading in the trial court. However, Michael does not cite any authority for his position that appellate attorney's fees must be specifically requested in a party's pleadings. Accordingly, these points are waived. *See* TEX.R.APP. P. 38.1(h); *Williamson v. New Times, Inc.,* 980 S.W.2d 706, 711 (Tex.App.—Fort Worth 1998, no writ). We overrule points 18 through 21.

## Conclusion

Having disposed of all of Michael's points, we affirm the trial court's order except as to the award of attorney's fees to Bee. We reverse the award of attorney's fees to Bee and remand that issue to the trial court for a determination of whether there is good cause for the award. *See Marichal,* 832 S.W.2d at 798.