11th Court of Appeals

 Eastland, Texas

            Opinion

 

South Plains Lamesa
Railroad, Ltd.

Appellant

Vs.       No. 
11-01-00133-CV - Appeal from Dawson County

Acero International, Inc.

Appellee

 

Acero
International, Inc. brought suit against South Plains Lamesa Railroad, Ltd.
(SPLR) for breach of a written contract and breach of an oral contract.  SPLR filed a counterclaim alleging that
Acero breached the written contract. 
Acero contended that the facts showed that SPLR had repudiated the
written contract.  The jury found that
SPLR repudiated the written contract and that the repudiation was not excused
and awarded Acero $25,000 in damages. 
The jury also found that SPLR breached the oral contract and that the
breach was not excused and awarded $5,000 in damages. The jury further found
that Acero failed to comply with its written agreement with SPLR but that its
failure to comply was excused.   Based
upon the jury=s findings, the trial court entered judgment
that Acero recover $25,000 from SPLR for breach of the written contract and
$5,000 for breach of the oral contract and that SPLR take nothing on its
counterclaim.  We affirm.  

In its
first and second issues on appeal, SPLR argues that there is no evidence or
insufficient evidence to support the jury=s finding that SPLR repudiated the contract and that there is no
evidence or insufficient evidence to support the jury=s finding that any repudiation by SPLR was
not excused.  In its third and fourth
issues on appeal, SPLR argues that there is no evidence or insufficient
evidence to support the jury=s finding that SPLR breached the oral contract and that there is no
evidence or insufficient evidence to support the jury=s finding that any failure to comply with the
oral contract was not excused. 








 In order to address the no‑evidence
argument, we must consider only the evidence and inferences that tend to
support the finding, disregarding any evidence or inferences to the
contrary.  If there is any evidence of
probative force to support the finding, the no evidence point must be
overruled.   Juliette Fowler Homes, Inc.
v. Welch Associates, Inc., 793 S.W.2d 660 (Tex.1990);   In re King's Estate, 244 S.W.2d 660 (Tex.1951); see also Merrell
Dow Pharmaceuticals, Inc. v. Havner, 953 S.W.2d 706, 711 (Tex.1997), cert.
den'd,  523 U.S. 1119 (1998).  In order to determine if the evidence is
factually sufficient, we must review all of the evidence and determine whether
the challenged finding is so against the great weight and preponderance of the
evidence as to be manifestly unjust.  
Pool v. Ford Motor Company, 715 S.W.2d 629 (Tex.1986); In re King's
Estate, supra.

Joe and
Lynn Mangum are the primary owners and officers of Acero, and Larry D. Wisener
is the general manager of SPLR.   SPLR
acquired a line of railroad known as the ALamesa branch line@ from Atchison, Topeka, and Sante Fe. 
SPLR received authority  to
abandon the Lamesa branch line, and Wisener made plans to remove the railroad
materials.  Wisener entered into a
contract with another party to remove the metal from the railroad.  In September 1997, Mangum and Wisener on behalf
of Acero and SPLR entered into a contract in which Acero was to remove all
cross ties and switch ties along a 44.7-mile stretch of the Lamesa branch line
and clean up along the line after removing the ties.  As compensation, Acero was to receive ownership of all ties
removed except A[a]ll Relay Switch Ties and Two Thousand (2,000)
Number One (#1) Relay Track Ties@ which were to be returned to SPLR.

            The
contract stated that Acero was to begin removing the ties as soon as possible
after signing the contract and that Acero was to carry on a continuous
operation completing all tie removal and relocation of the ties by May
1998.  The contract required Acero to
furnish SPLR with a certificate of insurance which included proof of worker=s compensation insurance.  The contract stated that a Apredetermined site will be available for disposal
for all ties not salvaged (located at or near Tahoka, Texas).@  The
contract provided that Acero could not assign or subcontract any portion of the
tie removal.








Joe Mangum
testified at trial that he was ready to begin the tie removal in September 1997
but that the metal rail had not been removed. 
Mangum received a bid on another job, and he had his crew begin work on
the other job.  At the end of November,
Mangum went by himself to begin the tie removal for SPLR.  At that time, Mangum and SPLR entered into
an oral contract in which Acero would remove the metal rail and the other track
materials (OTM) for $45 a ton until SPLR could secure a crew to remove the rail
and OTM.  Mangum=s crew arrived in December 1997, and they
began removing the rail, OTM, and ties. 
Mangum stated that his crew worked removing the rail and OTM until
mid-January 1998 and that they removed approximately 250 to 260 tons of
OTM.  

Mangum
stated that SPLR had agreed to pay for the OTM removal on a weekly basis but
that, after two to three weeks, he had not been paid.  Mangum requested payment, and Wisener told Mangum to load the OTM
and weigh it.  Mangum testified that the
parties had agreed he would receive a percentage per mile based upon a formula
that was standard in the industry to compute the weight of OTM.  Mangum testified that he has never been paid
for the OTM removal.  

Mangum
testified that, as they removed the ties, they separated the number one relay
ties and bundled them for SPLR.  Mangum
admitted that he had all new employees and that he probably did not supervise
their grading and bundling of the ties for SPLR as closely as he should
have.  SPLR did not approve of the 2,000
ties Acero had bundled.  Acero then
rebundled the ties until they provided 2,000 number one relay ties.  However, SPLR never returned the ties they
found unacceptable. 

 Mangum stated that, as they were removing the
ties, they began accumulating a lot of Atrash ties.@  The contract called for the Atrash ties@ to be disposed of at a location at or near Tahoka.  Mangum testified that Wisener never told him
where to dispose of the trash ties.

Mangum
further testified that Wisener interfered with his agreements to sell the ties
to other parties.  Mangum made an
agreement with another party to store the ties, and Wisener instructed Mangum
to remove the ties from that property.  Mangum
testified that, except for the switch ties and 2,000 relay ties, the remaining
ties belonged to Acero to dispose of or sell; however, Wisener would not allow
Mangum=s employees to remove ties they had bundled
and stacked.  Because of these actions
by Wisener, Mangum believed that SPLR blocked Acero=s performance of the agreement and that SPLR
intended to abandon their agreement. 








John
Andrew Cunningham who worked for Acero on the tie removal job testified that
there were approximately 2,000 to 2,500 ties that were stacked, bundled, and
stored at the railroad yard depot in Lamesa. 
Cunningham went to the depot to load the ties and move them to some
property rented by Acero.  Cunningham
stated that he and other employees were at the depot loading the ties when
Wisener arrived and told them to get off the property.  Cunningham said that Wisener was Aextremely agitated@ and that Wisener told them  to A[g]et [their] a-s back on the main line and do [their] job.@ 
Wisener told them to get off the property and not to come back.   

On April
10, 1998, Mangum sent a letter to Wisener that listed in detail areas in which
Mangum felt Wisener was not fulfilling his obligations under both the written
and oral contracts.   The letter stated:

It is obvious to me that you have neither the
intention or the ability to approach this in a businesslike manner and,
therefore, this letter will serve as my notice that Acero International, Inc.
does not intend to remove any additional ties from the railroad between Lamesa
and Slayton (sic).  

 

Mangum
requested that Wisener release all ties Acero had removed from the railroad and
placed on SPLR property and that Wisener pay Acero for removal of rail and OTM.

Wisener wrote a letter responding to each of Mangum=s allegations.  The letter stated:

It was
evident by this time that you were incapable of performing according to the
contract.  Any further removal of ties
located on Railroad Property until this disagreement is resolved is considered
theft and local authorities have been notified.

 

Wisener also stated that
the letter would serve as notice that SPLR Awill try to resolve this matter in a professional and business-like
manner, however, this letter is in no way releasing ties or any other materials
remaining on Railroad Property.@  Wisener stated that he
estimated the weight of the OTM removed by Acero to be 125 tons and that he
would pay Acero for OTM removal upon the return of tools SPLR loaned to Acero
and upon remittance by Acero for relay ties removed from railroad property and
utilized in track construction in Albuquerque, New Mexico. 








Wisener
testified at trial that, prior to signing the contract, he took Mangum along
the railroad line to discuss the job and that he showed Mangum the Astaging areas@ in which to store the removed ties. Wisener stated that, under the
contract, Mangum was not authorized to enter into a contract with other parties
to store the removed ties.  Wisener said
that Mangum indicated he could find the land in Tahoka designated for disposal
of the ties but that Mangum placed trash ties and other trash on SPLR property
without ever cleaning it up.  Wisener
stated that Acero=s
progress in removing the ties was very slow and that they only removed
approximately eight miles of ties. 
Wisener testified that he did not terminate the contract with Mangum but
that he received a letter from Mangum terminating the contract. Wisener did not
tell Cunningham that Acero could not complete the job but, rather, told him to
get back to work on the main line. 

SPLR first
argues that there was no evidence or insufficient evidence to support the jury=s finding that SPLR repudiated the contract.
A party repudiates a contract or agreement when, by  words or actions, the contracting party indicates that he is not
going to perform his contract in the future. 
Jenkins v. Jenkins, 991 S.W.2d 440 (Tex.App. ‑ Fort Worth 1999,
pet=n den=d); Chavez v. Chavez, 577 S.W.2d 306, 307 (Tex.Civ.App. ‑ El Paso
1979, writ ref'd n.r.e.).  Repudiation
consists of conduct that shows a fixed intention to abandon, renounce, and
refuse to perform the contract.  Jenkins
v. Jenkins, supra.

  Viewing only the evidence that supports the
jury=s finding, the record shows that Wisener
instructed workers for Acero to get off of SPLR property and not to remove any
ties from the property.  We find that
the jury=s findings are supported by sufficient
evidence to withstand a no-evidence challenge. 
The contract stated that Acero was to receive ownership of all ties
removed except for 2,000 Number One relay ties and all switch ties.  There was testimony at trial that SPLR had
the option to purchase any other relay ties that were available in addition to
the 2,000 provided for in the contract. Although the jury heard conflicting
testimony concerning Acero=s ability to remove the ties from SPLR property and sell them to third
parties as well as conflicting testimony on whether Wisener ordered Acero
workers off of SPLR property and instructed them not to return, we find that
there is more than a scintilla of probative evidence that supports the jury=s finding that SPLR repudiated the contract
and that the jury=s
finding is not so against the great weight and preponderance of the evidence as
to be manifestly unjust.  We hold that
the jury=s finding that SPLR=s repudiation of the contract was not excused
is supported by sufficient evidence to withstand both a no evidence challenge
and an insufficient evidence challenge. 
SPLR=s first and second issues on appeal are
overruled.  








SPLR next
contends that there was no evidence or insufficient evidence to show that SPLR
breached the oral contract in which SPLR was to pay Acero for removing rail and
OTM.  The evidence is uncontradicted
that SPLR agreed to pay Acero $45 per ton for removing the rail and OTM.  The evidence is also uncontradicted that
SPLR has not paid Acero for removing the rail and OTM.  Therefore, the evidence supports the jury=s finding that SPLR  breached the oral contract, and 
the jury=s finding is not so against the great weight
and preponderance of the evidence as to be manifestly unjust. 

SPLR
argues that any breach of the oral contract was excused because Acero did not
provide SPLR with an invoice requesting payment until after Acero stopped
removing ties under the written contract. 
SPLR also contends that payment for removing the rail and OTM was
conditioned upon Acero returning tools it borrowed from SPLR.  However, the jury heard evidence that SPLR
agreed to pay Acero $45 per ton for the rail and OTM.  The jury heard evidence that such payment was to be calculated by
a formula accepted in the industry without requiring Acero to actually weigh
the rail and OTM it removed and present SPLR with an invoice.  The record also shows that Acero requested
payment for rail and OTM removal after two or three weeks of working in that
capacity and that there was no request for returning borrowed tools at that
time.  SPLR has not shown that the jury=s finding that SPLR=s breach of the oral contract was not excused
is so against the great weight and preponderance of the evidence as to be
manifestly unjust.  Appellant=s third and fourth issues on appeal are
overruled.  

In its
fifth issue on appeal, SPLR contends that Acero=s counsel made an improper jury argument during closing arguments.  In order to obtain a reversal for improper
jury argument, the complainant must show: 
(1) that there is error in the argument; (2) that it was not invited or
provoked; (3) that the error was preserved by an objection, motion for
mistrial, or motion to instruct; (4) that the error was not curable by
instruction, reprimand by the judge, or proper withdrawal of the statement; and
(5) that the argument by its nature, degree, and extent constituted reversible
harmful error.   Standard Fire Insurance
Company v. Reese, 584 S.W.2d 835, 839 (Tex.1979).  Incurable jury argument occurs when comments are so inflammatory
that their harmful nature cannot be cured by an instruction to disregard.   National Union Fire Insurance Company of
Pittsburgh, Pennsylvania v. Kwiatkowski, 915 S.W.2d 662, 664 (Tex.App. ‑
Houston [14th Dist.] 1996, no writ). 
The appellate court must closely examine all of the evidence to
determine the probable effect of the argument on a material finding.  Standard Fire Insurance Company v. Reese,
supra at 840.  The complainant must show
that the probability that the improper argument caused harm is greater than the
probability that the verdict was grounded on the proper proceedings and
evidence.  National Union Fire Insurance
Company of Pittsburgh, Pennsylvania v. Kwiatkowski, supra.








During its
final argument, counsel for Acero stated, AWhen you get into a contract dispute, you=re supposed to look at the contract most harshly against the person
that wrote it, not just, hey, you know, this is a contract and  - - .@   Counsel for SPLR objected to
the argument, and the trial court instructed the jury that what the lawyers say
is not evidence.  The trial court also
stated:

The evidence is what you hear from the
witness stand and what you say from the witness stand and what you see in the
exhibits.  The lawyers have a right to
argue their interpretation of it.  What
they say is not evidence.  What=s evidence is what you heard from the witness
stand and what you see in the exhibits. 

 

SPLR=s counsel then objected to the Alegal argument@ that the Acontract
is to be interpreted against the drafter.@  The trial court sustained the
objection and instructed the jury to Adisregard what=s not
in the charge as to what the law is.@ 

Viewing
all of the evidence, we find that the argument by Acero=s counsel was not so inflammatory as to be
incurable by the trial court=s instructions to disregard the statement.  SPLR has not shown that the argument was so harmful that the
verdict was not based upon proper evidence. 
SPLR=s fifth issue on appeal is overruled.

The
judgment of the trial court is affirmed.

 

JIM
R. WRIGHT

JUSTICE

 

August 15, 2002

Do not publish.  See TEX.R.APP.P. 47.3(b).

Panel consists of: Wright, J., and

McCall, J., and McCloud, J.[1]











[1]Austin McCloud, Retired Chief Justice, Court of
Appeals, 11th District of Texas at Eastland sitting by assignment.