**Affirmed as Modified and Memorandum Opinion filed May 9, 2013.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-11-01087-CV

---

## TIMOTHY CASTRO, JR., Appellant,

## V.

## MARGARET CASTRO, Appellee.

---

**On Appeal from the 308th District Court
Harris County
Trial Court Cause No. 2006-30159**

---

## M E M O R A N D U M   O P I N I O N

Appellant Timothy Castro, Jr., appeals the trial court's judgment enforcing an agreed divorce decree in favor of his former wife, Margaret Castro.[1] We affirm the trial court's judgment as modified.

---

[1] Margaret also goes by "Peggy," and is occasionally referred to in the record by that nickname.

# I

Timothy and Margaret Castro divorced on April 20, 2007, after almost thirty years of marriage. At the time, two of their three adult children, Matthew and Stephanie, were in college. Timothy and Margaret executed an agreement incident to divorce, which the trial court approved and incorporated by reference into the divorce decree. The agreement provides, in relevant part:

> [Timothy] agrees to and will pay one[-]hundred percent (100%) of all tuition, activities fees, laboratory fees, books, living expenses, health insurance and related uninsured health-care expenses, and car and maintenance expenses incurred to send Matthew Scott Castro and Stephanie Margaret Castro to college until each child attains a bachelor's degree or the equivalent, provided the child is a [sic] enrolled as a student toward the completion of either a college bachelor's degree or a technical, vocational, or business school diploma. . . . This obligation will terminate upon the completion of a degree as described above.
>
> . . .
>
> It is the mutual desire of the parties to provide a continuing measure of support for Margaret Castro, Receiving Party, after divorce. The parties acknowledge the disparity in education, [and] earning capacity between Timothy Castro, Jr. and Margaret Castro, and it is their desire by this agreement to provide continuing support for Margaret Castro based on the recognized need for such support.
>
> . . .
>
> Timothy Castro, Jr. will pay to Margaret Castro $13,500.00 per month as alimony. These payments will be payable monthly beginning on March 1, 2007, and continuing for a period of 6 years, with the last payment being February 1, 2013. These payments shall terminate only upon [Margaret's] death.
>
> . . .
>
> Commencing March 1, 2013, Timothy Castro shall pay Margaret Castro $5[,]000.00 per month as alimony. Such payments shall continue monthly for a period of eight years with the last payment being on February 1, 2021. The obligation to make the[]$5[,]000.00

payments under this paragraph will end upon Margaret's death, marriage or co-habitation with a person of the opposite sex who is not related by blood or marriage.

. . .

[Timothy] agrees that time is of the essence in the payment of the periodic alimony payments. If default is made by [Timothy] in the prompt payment of any amounts due under the terms of this agreement and the default continues for a period of more than 10 days, except in the case of catastrophic illness or injury, the entire remaining alimony obligation of [Timothy], at the option of [Margaret], will then be accelerated and will become immediately due and payable . . . .

At the time of the divorce, Timothy worked as an anesthesiologist for Northwest Anesthesia and Pain, a partnership of which he was also the president. His annual income was approximately $800,000. In December of 2008, however, he was suspended from the partnership, and he forfeited his partnership interest a few months later.[2] In February of 2009, Timothy stopped making the payments he owed Margaret under the agreement, claiming he was financially unable to do so.

In December of 2009, Margaret moved to enforce the decree, seeking a money judgment for the sum of Timothy's entire remaining alimony obligation, the unpaid balance of Matthew and Stephanie's expenses, and her attorney's fees. The trial court granted her motion and awarded her $1,128,000.00 for the remaining balance of Timothy's alimony obligation and $34,236 for the children's expenses. The court also awarded Margaret's reasonable attorney's fees, which totaled $102,475, directly to her attorney, Joan Lucci Bain, specifying that Bain could enforce the judgment in her own name. Timothy requested findings of fact

_____

[2]The other partners voted to suspend Timothy after discovering that he had removed a substantial amount of money from the partnership without the other partners' approval. Between April and May of 2009, Timothy and Northwest signed a settlement agreement through which Northwest forgave Timothy's debt in exchange for his partnership interest.

and conclusions of law, which the trial court issued. He also filed a motion for new trial, which the trial court denied.

On appeal, Timothy argues the trial court erred by: (1) entering a judgment of enforcement rather than a judgment for breach of contract, and for entering a judgment that oversteps federal bankruptcy jurisdiction; (2) making findings of fact and conclusions of law that were neither relevant to the proceedings nor proven by the evidence; (3) awarding Margaret's attorney's fees directly to her attorney; and (4) denying Timothy's affirmative defenses of latent ambiguity and impossibility.

II

A

Under the Family Code, the court that renders a divorce decree retains jurisdiction to enforce the property division within that decree. Tex. Fam. Code § 9.002. The court may also clarify the prior order, but it may not amend, modify, alter, or change the division of property made or approved in the decree. *Id.* § 9.007. In enforcing a decree, the trial court may render further orders and money judgments, and it may award costs and reasonable attorney's fees for the enforcement action. *See id.* § 9.006–.014; *Snodgrass v. Snodgrass*, 332 S.W.3d 653, 660 (Tex. App.—Houston [14th Dist.] 2010, no pet.). When an agreement incident to divorce is approved by the court and incorporated into the divorce decree, the agreement constitutes part of a valid and binding final judgment and is enforceable as part of the decree. *Jenkins v. Jenkins*, 991 S.W.2d 440, 445 (Tex. App.—Fort Worth 1999, pet. denied); *Shoberg v. Shoberg*, 830 S.W.2d 149, 152 (Tex. App.—Houston [14th Dist.] 1992, no writ); *see* Tex. Fam. Code § 7.006. A consent agreement must be interpreted as if it were a contract between the parties, and the interpretation thereof is governed by the laws relating to contracts rather

4

than the laws relating to judgments. *McCray v. McCray*, 584 S.W.2d 279, 281 (Tex. 1979) (per curiam) (citing *Ex Parte Jones*, 358 S.W.2d 370, 375 (Tex. 1962)). "Although rules relating to contract interpretation apply, an agreed judgment is accorded the same degree of finality and binding force as a final judgment rendered at the conclusion of an adversary proceeding." *Id.* at 281. Parties to an agreed judgment are prohibited from raising contractual defenses in an action to enforce the agreement when those defenses collaterally attack the validity of the agreement at its inception, execution, or at the time it is approved by the court in the divorce decree. *Shoberg*, 830 S.W.2d at 152; *Spradley v. Hutchison*, 787 S.W.2d 214, 219–20 (Tex. App.—Fort Worth 1990, writ denied); *Giddings v. Giddings*, 701 S.W.2d 284, 289 (Tex. App.—Austin 1985, writ ref'd n.r.e.).

In this case, Timothy and Margaret's agreement was approved and incorporated by reference into the divorce decree. It therefore constitutes part of a valid and binding final judgment and is enforceable as part of the decree. *See Jenkins*, 991 S.W.2d at 445; *Shoberg*, 830 S.W.2d at 152. This conclusion is consistent with the language of the agreement, which specifies, "[I]t is the intent of the parties that this agreement . . . be incorporated by reference, adopted and approved by the court so as to [] form a part of the final decree of divorce to be entered in the above referenced cause, and enforceable as a final judgment of the court." Similarly, the decree provides, "Without affecting the finality of this Final Decree of Divorce, this [c]ourt expressly reserves the right to make orders necessary to clarify and enforce this decree."

Timothy argues he was misled by the trial judge's statements at the beginning of the trial, which suggested the trial was a breach-of-contract action. But in the portion of the record to which Timothy refers, the judge explains that the

law of contracts governs the interpretation of the agreement, which is why the judge considered Timothy's arguments about latent ambiguity and impossibility. Specifically, the judge stated, "The Agreement Incident to Divorce does not contain order language even though it's incorporated into the decree of divorce. As such, it is to be interpreted as a contractual agreement between the parties." This was a proper application of the law. *See McCray*, 584 S.W.2d at 281.

Accordingly, we overrule this issue.

## B

The trial court's enforcement judgment states that Timothy's alimony obligation "shall be non-dischargeable under §[]523 of the Bankruptcy Code." The next paragraph, describing the judgment for the children's unpaid expenses, contains an identical clause. Timothy argues these provisions erroneously infringe upon the federal bankruptcy court's jurisdiction.

Section 523(a)(5) of the Bankruptcy Code exempts from discharge any debt owed to a spouse, former spouse, or child for alimony, maintenance, or support. 11 U.S.C. § 523(a)(5); *see also* 11 U.S.C. § 101(14A) (defining "domestic support obligation" as a debt owed to a spouse, former spouse, or child that is in the nature of alimony, maintenance, or support of that spouse, former spouse, or child). Federal courts possess exclusive jurisdiction over cases under the Bankruptcy Code that arise from the bankruptcy petition itself. 28 U.S.C. § 1334(a); *see In re Wood*, 825 F.2d 90, 92 (5th Cir. 1987) ("The [§ 1334(a)] category refers merely to the bankruptcy petition itself, over which district courts (and their bankruptcy units) have original and exclusive jurisdiction."). In contrast, however, state and federal courts share concurrent jurisdiction over all civil proceedings arising under the Bankruptcy Code or arising in or related to cases under the Bankruptcy Code. 28 U.S.C. § 1334(b); *Graber v. Fuqua*, 279 S.W.3d 608, 611 (Tex. 2009); *see In re*

*Wood*, 825 F.2d at 93 (explaining that a proceeding falls within the scope of § 1334(b) if the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy). Specifically, bankruptcy courts and state courts have concurrent jurisdiction to determine whether a debt is discharged under section 523(a)(5). *In re Portaro*, 108 B.R. 142, 148 (Bankr. N.D. Ohio 1989); *In re Orr*, 99 B.R. 109, 110 (Bankr. S.D. Fla. 1989); *see Lorenzana v. Lorenzana*, No. 05-92-02578-CV, 1994 WL 60755, at *3 (Tex. App.—Dallas Feb. 28, 1994, writ denied) (not designated for publication). It remains, however, that whether a particular obligation constitutes alimony, maintenance, or support within the meaning of section 523 is a matter of federal bankruptcy law, not state law. *Matter of Biggs*, 907 F.2d 503, 504 (5th Cir. 1990). Therefore, courts must look beyond the labels that states or even parties give obligations to determine whether an obligation is in the nature of alimony, maintenance, or support. *Matter of Dennis*, 25 F.3d 274, 278 (5th Cir. 1994). Courts are bound by the intent of the parties at the time the agreement or decree was signed. *See In re Nugent*, 484 B.R. 671, 679 (Bankr. S.D. Tex. 2012).

Timothy and Margaret's agreement specifies that it was their mutual desire for the alimony payments to "provide a continuing measure of support for Margaret . . . based on the recognized need for such support." Further, the agreement states, "The alimony payments shall be structured and worded in the decree to comply with §[]523 of the Bankruptcy Code so they will be non-dischargeable." In turn, the decree provides, "The alimony payments shall be non-dischargeable under §[]523 of the Bankruptcy Code." Therefore, with respect to the alimony, the decree reflects the parties' unambiguous intent, and the trial court's enforcement judgment merely restates that provision. This did not overstep the jurisdiction of the federal bankruptcy courts.

With respect to the children's expenses, however, neither the agreement nor the decree specifies whether Timothy and Margaret intended that obligation to be non-dischargeable. In fact, the parties' inclusion of a discharge provision for Timothy's alimony obligation but omission of a similar provision for his children's expenses suggests that the omission was intentional. Therefore, the enforcement judgment altered the terms of the decree by stating Timothy's obligation for his children's expenses was non-dischargeable under section 523(a), and this exceeded the court's jurisdictional authority. *See* Tex. Fam. Code § 9.007(a). Accordingly, we modify the paragraph of the judgment beginning, "IT IS FURTHER ORDERED that Margaret Castro is awarded judgment for all unpaid support payments for tuition," by deleting the last clause, which reads, "and that judgment for this amount shall be non-dischargeable under §[]523 of the Bankruptcy Code."

## III

In his second issue, Timothy argues the trial court erred by making findings of fact and conclusions of law that are neither relevant to the judgment nor proven by the evidence.

## A

Timothy objects to findings of fact number 5, 19, and 20. Finding 5 describes the property division effected by the agreement and the decree, which were both admitted into evidence without objection. Finding 19 states that in lieu of paying the amounts he owed Margaret under the decree, Timothy diverted his available funds to other persons or entities, including his new wife, a company that was owned by his new wife, his attorney, and the IRS. In finding 20, the trial court says that in January of 2010, Timothy misrepresented to the IRS that he was paying the alimony due to Margaret in order to get a reduction in the amount he owed in taxes through an offer in compromise and to reduce his monthly

8

payments.

On appeal, Timothy asks this court to reverse these findings and either "render by reforming the [f]indings of [f]act to omit" the challenged findings or, alternatively remand the findings to the trial court to be reformed to accurately reflect the evidence. Reversal of the trial court's findings of fact, however, is not an available remedy on appeal. *See* Tex. R. App. P. 43.2 (identifying the types of judgment available to the appellate courts, all of which directly relate to the trial court's judgment).

Although we may reverse the trial court's judgment if the trial court made an erroneous finding on an ultimate fact issue, immaterial findings are harmless and not grounds for reversal. *Cooke Cnty. Tax Appraisal Dist. v. Teel*, 129 S.W.3d 724, 731 (Tex. App.—Fort Worth 2004, no pet.); *Able v. Able*, 725 S.W.2d 778, 780 (Tex. App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.). And, as Timothy himself points out, the findings he challenges were not material to the trial court's judgment. To support its judgment, the trial court merely needed to find that Timothy was in fact obligated to Margaret for the amounts she sought and that he defaulted on that obligation. Because the contested findings were not essential to the cause of action and did not directly affect the judgment, they are not grounds for reversal. *See Cooke Cnty.*, 129 S.W.3d at 731; *Able*, 725 S.W.2d at 780.[3]

---

[3] Timothy argues he is harmed by finding 20 because it "is res judicata to any subsequent proceeding involving him." We disagree. A subsequent suit is barred by the doctrine of res judicata "if it arises out of the same subject matter of a previous suit and which through the exercise of diligence, could have been litigated in a prior suit." *Barr v. Resolution Trust Corp. ex rel. Sunbelt Fed. Sav.*, 837 S.W.2d 627, 631 (Tex. 1992). But the issue of whether Timothy made misrepresentations to the IRS in seeking his offer in compromise could not have been litigated in the underlying suit because Margaret did not have standing to bring that claim against Timothy. Therefore, the trial court's finding does not preclude Timothy from litigating that issue in a future proceeding.

B

Timothy also argues that conclusions of law number 4, 5, and 6 misstate prevailing law.[4] We review conclusions of law de novo, and we will follow the trial court's conclusions unless they are erroneous as a matter of law. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002); *Zagorski v. Zagorski*, 116 S.W.3d 309, 314 (Tex. App.—Houston [14th Dist.] 2003, pet. denied).

Conclusion of law number 4 reads: "Once approved by the court, an agreement incident to divorce is no longer merely a contract between the parties; it becomes the judgment of the court." As we discussed above, when an agreement incident to divorce is approved by the court and incorporated into the divorce decree, the agreement constitutes part of a valid and binding final judgment and is enforceable as part of the decree. *See Jenkins*, 991 S.W.2d at 445; *Shoberg*, 830 S.W.2d at 152. This conclusion is a correct statement of the law.

Conclusion number 5 states: "Contract defenses that pertain to the validity of an agreement at the time of its inception, execution, or at the time it is approved by the court in a divorce, are impermissible collateral attacks on the judgment." Again, as previously explained, this is a correct statement of the law. *See Shoberg*, 830 S.W.2d at 152; *Spradley*, 787 S.W.2d at 219–20; *Giddings*, 701 S.W.2d at 289.

In conclusion number 6, the trial court extends the law from conclusions 4 and 5 to the facts of this case, stating, "Timothy Castro Jr.'s affirmative defenses of duress, lack of mental capacity, lack of consideration, failure of consideration and

---

[4] Although Timothy also objects to conclusion number 8 in the heading of this section in his brief, he fails to make any further mention of that conclusion in his discussion. This objection is therefore inadequately briefed and presents nothing for review. *See* Tex. R. App. P. 38.1(i).

unconscionability are collateral attacks on the [d]ecree." This is a correct application of the relevant law to the facts of this case.

We overrule Timothy's second issue.

IV

In his third issue, Timothy argues the trial court's judgment erroneously awarded Margaret's attorney's fees directly to her attorney. Timothy also argues this error was harmful because the trial court's conclusions of law award the same fees to Margaret.

Section 9.014 of the Family Code provides, "The court may order the attorney's fees to be paid directly to the attorney, who may enforce the order for fees in the attorney's own name." Tex. Fam. Code § 9.014. Because we concluded the trial court properly treated the underlying trial as an enforcement action governed by article 9, section 9.014 also applied. But, as Timothy points out, the trial court's judgment making the award payable to and enforceable by Margaret's attorney conflicts with the conclusion of law that makes the same fees payable to and enforceable by Margaret.

The language from section 9.014 is permissive, stating courts *may* award fees directly to the attorney. In contrast, Timothy and Margaret's agreement states, "Reasonable attorney's fees and expenses of a party incurred in successfully prosecuting or defending a suit under this agreement against the other party or the other party's estate will be recoverable by the successful party in the action." Because the language in the parties' agreement is unambiguous, the trial court should have given effect to their intention as expressed in the agreement instead of relying on section 9.014. *See, e.g.*, *McMann v. McMann*, 942 S.W.2d 94, 98 (Tex. App.—Houston [1st Dist.] 1997, no writ) (reversing the trial court's attorney's-fee

11

award, which was based on a permissive statute, because the award conflicted with unambiguous language in the parties marital property agreement, which had been incorporated into their final divorce decree).

Accordingly, we sustain Timothy's third issue and modify the judgment to delete the clause that reads, "Joan Lucci Bain, as attorney for Margaret Castro is awarded judgment," and substitute it with, "Margaret Castro is awarded judgment." Further, we delete the sentence that reads, "Joan Lucci Bain may enforce this judgment for fees, expenses, and cost in the attorney's own name by any lawful means available." In its place shall be the following: "Margaret Castro may enforce this judgment for fees, expenses, and cost in her own name by any lawful means available."

V

In his fourth issue, Timothy argues the trial court erred by granting summary judgment against him on the issue of latent ambiguity and by denying his affirmative defense of impossibility.

A

We interpret a divorce decree as we do other court judgments and construe it as a whole to harmonize and give effect to the entire decree. *Hagen v. Hagen*, 282 S.W.3d 899, 901 (Tex. 2009); *Snodgrass*, 332 S.W.3d at 657. If the decree is unambiguous, this court must adhere to the literal language used. *Hagen*, 282 S.W.3d at 901. If a written instrument is so worded that it can be given a certain or definite legal meaning or interpretation, it is not ambiguous and the court will construe it as a matter of law. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). A latent ambiguity exists when a contract is facially unambiguous but fails as applied to the subject matter because of a collateral matter. *Zeolla v. Zeolla*, 15 S.W.3d

12

239, 242 (Tex. App.—Houston [14th Dist.] 2000, pet. denied); *see Friendswood Dev. Co. v. McDade + Co.*, 926 S.W.2d 280, 282–83 (Tex. 1996) (per curiam). The latent ambiguity must become apparent when the contract is read in the context of surrounding circumstances. *See Coker*, 650 S.W.2d at 393–94 (analyzing an agreement that obligated a man to pay his wife $25,000 from periodic payments he was owed on a debt. The third-party debtor's subsequent default created a latent ambiguity because the agreement was silent as to whether the man's obligation was contingent upon him actually receiving the payments); *Zeolla*, 15 S.W.3d at 242 (analyzing an agreement that obligated a man to pay his former wife retirement benefits if he retired at age 65 and finding a latent ambiguity when he retired at age 57 because the agreement was silent as to his obligations if he retired at any age other than 65). If the contract is ambiguous, it is interpreted by reviewing both the decree as a whole and the record. *Hagen*, 282 S.W.3d at 901. When a contract contains an ambiguity, the granting of a motion for summary judgment is improper because the interpretation of the instrument becomes a fact issue. *Coker*, 650 S.W.2d at 394.

In this case, the agreement is unambiguous. It specified that Timothy's obligation for each child's expenses terminated when each child earned his or her bachelor's degree or the equivalent, but only as long as the child was enrolled as a student in pursuit of such a degree. With respect to the alimony, the agreement identified specific dates on which the obligation began, changed, and terminated. It also listed specific superseding events, such as Margaret's death, that would prematurely terminate the obligation. Unlike the obligations in *Coker* and *Zeolla*, Timothy's obligation was neither contingent upon the occurrence of a future event nor tied to a specific source of income.

Further, the agreement is not ambiguous because Timothy and Margaret

13

specifically accounted for the possibility that Timothy's income would decrease. The agreement secured Margaret's right to receive payments by giving her security interests in several partnership interests Timothy owned at the time. The agreement also specified how Margaret's security interests would be affected if Timothy left those partnerships. Further, the parties accounted for the possibility that Timothy may file for bankruptcy by specifying their intent for his alimony obligation to be non-dischargeable.

Accordingly, we conclude the agreement is unambiguous, both on its face and in the context of surrounding circumstances, as a matter of law. *See Coker*, 650 S.W.2d at 393–94; *Zeolla*, 15 S.W.3d at 242. Therefore, the trial court did not err by disposing of the latent-ambiguity issue on summary judgment.

B

Timothy also argues the trial court erred by denying his affirmative defense of impossibility, which he asserted based on his decreased income. The trial court allowed him to present evidence to support this argument but ultimately overruled it.

Under the law of contracts, there are two types of impossibility: objective and subjective. *Grayson v. Grayson Armature Large Motor Div., Inc.*, No. 14-09-00748-CV, 2010 WL 2361432, at *5 (Tex. App.—Houston [14th Dist.] June 15, 2010, pet. denied) (mem. op.). Something is objectively impossible if "the thing cannot be done," such as an inability "to perform the promise to settle [a] claim by entering an agreed judgment in the lawsuit which had been dismissed" prior to the completion of the agreement. *Id.* at *5. In contrast, a subjective impossibility is due wholly to the inability of the individual promisor, such as a promisor's inability to pay. *Id.*; *Janak v. FDIC*, 586 S.W.2d 902, 906–07 (Tex. Civ. App.—Houston [1st Dist.] 1979, no writ). Only an objective impossibility excuses a promisor's

14

obligation under a contract; a subjective impossibility neither prevents the formation of the contract nor discharges a duty created by a contract. *Johnson v. Johnson*, 02-10-00296-CV, 2011 WL 3426223, at \*3 (Tex. App.—Fort Worth Aug. 4, 2011, no pet.); *Grayson*, 2010 WL 2361432, at \*5.

Timothy's impossibility argument was based on his personal financial inability to fulfill his obligations under the agreement. This was a subjective impossibility, which did not excuse his performance. *See Johnson*, 2011 WL 3426223, at \*3; *Grayson*, 2010 WL 2361432, at \*5. Therefore, the trial court properly overruled Timothy's impossibility defense.

We overrule Timothy's fourth issue.

\* \* \*

Accordingly, we modify the judgment to (1) delete the clause providing that Timothy's obligation for Matthew and Stephanie's expenses is non-dischargeable under section 523 of the Bankruptcy Code and (2) award Margaret's attorney's fees directly to Margaret rather than to her attorney. We affirm the judgment as modified.


/s/     Jeffrey V. Brown
        Justice


Panel consists of Chief Justice Hedges and Justices Brown and Busby.