**In re Dale CORDER, Relator.**

**No. 01–09–00004–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

April 10, 2009.

Rehearing En Banc Overruled May 8, 2009.

---

James S. Healey, Houston, TX, for relator.

Patsy Young, Houston, TX, for real party in interest.

Panel consists of Justices TAFT, BLAND, and SHARP.

## OPINION

TIM TAFT, Justice.

Relator, Dale Corder, requests habeas corpus relief from the trial court's August 19, 2008 order holding him in contempt and committing him to confinement in the Harris County Jail for 180 days as punishment and, thereafter, as a civil coercive measure, from day to day until he pays child support arrearage. Real party in interest, Norma Jean Veglia, has filed no response to relator's petition for writ of habeas corpus. We examine relator's points of error relating to the punitive portion of the contempt order. Holding that those points are without merit, we conclude that the punitive portion of the contempt order is valid. We further conclude that relator's challenge to the civil, coercive portion of the challenged order is premature, and we thus do not reach it. We remand relator to the custody of the sheriff to finish serving the balance of the punitive confinement assessed by the trial court.

## Background

The trial court dissolved the marriage of relator and Veglia on February 14, 2000. In the decree, the trial court ordered relator to pay Veglia child support of $400 per month on the first of each month, commencing February 1, 2000. Additionally, the trial court ordered relator to provide medical support for the couple's children.

On April 8, 2008, Veglia filed a motion for contempt, alleging that, commencing June 1, 2002 and ending April 1, 2008, relator had failed to pay child support as ordered, resulting in an arrearage of $7,360.36. She further alleged that relator had failed to pay her for medical support of the children as ordered in the decree. Additionally, Veglia pleaded that two more $400 child support payments would come due on May 1, 2008 and June 1, 2008. In July 2008, relator filed a response to Veglia's motion, asserting inability to pay the support and claiming reimbursement and offsets for support that he had provided to one of the children when that child had lived with relator from June 2006 to June 2008.

On August 19, 2008, the trial court heard Veglia's motion for contempt. The trial court found that although he had the ability to pay them, relator did not make his $400 monthly child support payments for the periods of July 1, 2005 through October 1, 2006 and April 1, 2008 through August 1, 2008. Additionally, the trial

court found relator's ongoing, periodic child support arrearage that had accrued during the period from June 1, 2002 through August 19, 2008, when added to a May 10, 2002 previously adjudicated amount, to total $15,069.91. Moreover, the trial court found that relator owed Veglia $4,781.82 for his share of health insurance premiums and uninsured medical expenses that she had paid, for a total child support arrearage of $19,851.73, exclusive of attorney's fees. Finally, the trial court found that relator owed Veglia $7,735 in attorney's fees for her attorney's services relative to the contempt proceeding. The trial court assessed relator multiple 180–day punitive confinement sentences for each of the multiple violations of the child support order that it found and ordered that the periods of punitive confinement run concurrently.

As a civil, coercive measure, the trial court also ordered that after relator completed his punitive confinement, he remain confined from day to day until he paid Veglia the $19,851.73, attorney's fees of $7,735, and court costs. The sheriff took relator into custody on August 19, 2008, where he remained until February 4, 2009, when, upon posting bond, he was conditionally discharged from confinement, pending our final determination of his petition for habeas corpus relief.

### Standard of Review

 A habeas corpus petition is a collateral attack on a judgment, the purpose of which is not to determine the final guilt or innocence of the relator, but to ascertain whether relator has been confined unlawfully. *Ex parte Gordon,* 584 S.W.2d 686, 687–88 (Tex.1979). The presumption is that the order is valid. *In re Turner,* 177 S.W.3d 284, 288 (Tex.App.-Houston [1st Dist.] 2005, orig. proceeding) (citing *Ex parte Occhipenti,* 796 S.W.2d 805, 809

(Tex.App.-Houston [1st Dist.] 1990, orig. proceeding)). We issue a writ of habeas corpus if a trial court's contempt order is beyond the court's power or the court did not afford relator due process of law. *Id.* at 288 (citing *In re Henry,* 154 S.W.3d 594, 596 (Tex.2005)). The relator bears the burden of showing that he is entitled to relief. *Id.* at 288 (citing *Occhipenti,* 796 S.W.2d at 808–09).

### Punitive Confinement Assessment

We first examine relator's points of error one, two, three and five, which bear on the validity of the trial court's assessment of concurrent punitive confinement for 180 days.

### A. Rights to a Jury Trial and Against Self–Incrimination

 In points of error one and two, relator asserts that his due process rights under United States Constitution Amendment V and Texas Constitution article I, section 15 were violated because the trial court did not admonish him of his right to a jury trial and his right not to give evidence against himself. Cases of criminal contempt in which the sentence actually imposed does not exceed six months' imprisonment are exempt from the requirements of a jury trial. *Taylor v. Hayes,* 418 U.S. 488, 495–96, 94 S.Ct. 2697, 2702, 41 L.Ed.2d 897 (1974); *Ex parte Werblud,* 536 S.W.2d 542, 547 (Tex.1976). Here, the punishment imposed did not exceed six months. Thus, relator had no right to a jury trial under the United States Constitution. Further, relator waived any privilege against self-incrimination that he had under the Fifth Amendment of the United States Constitution when his counsel put him on the stand to testify on direct examination in support of his affirmative defenses and when, on cross-examination, neither he nor his attorney claimed the privilege. *See Ex parte Tankersley,* 650

S.W.2d 550, 551 (Tex.App.-Fort Worth 1983, writ ref'd n.r.e.) (holding that relator waived claim against self-incrimination when neither he nor his attorney asserted it, citing *Roberts v. United States*, 445 U.S. 552, 560, 100 S.Ct. 1358, 1364, 63 L.Ed.2d 622 (1980)). Relator cites no cases supporting his argument that in this case, the Texas Constitution affords him a right to a trial by jury and to a trial court admonition of a right not to be forced to incriminate himself. We have been unable to find such cases, and we decline to hold that the Texas Constitution affords such rights in this case. We overrule points of error one and two.

### B. Inability to Pay Child Support Payments As They Came Due

■ In response to Veglia's motion for contempt, relator pleaded the affirmative defense of inability to pay the child support. In point of error three, relator asserts it was error and a denial of due process for the trial court to incarcerate him after he had proven his affirmative defense and when Veglia could not prove criminal contempt beyond a reasonable doubt.

■ A writ of habeas corpus is a collateral attack on the contempt order. *Ex parte Townsley*, 156 Tex. 402, 297 S.W.2d 111, 112 (1956). We treat the contempt order as void if the evidence offered at the hearing conclusively establishes relator's involuntary inability to perform. *Id.* For this Court to hold the punitive portion of the contempt order invalid, relator must conclusively establish that he was unable to pay each child support payment as it accrued. *Ex parte Papageorgiou*, 685 S.W.2d 776, 778 (Tex.App.-Houston [1st Dist.] 1985, orig. proceeding).

Here, the time periods during which the trial court found that relator did not make the child support payments were July 1, 2005 through October 1, 2006 and April 1, 2008 through August 1, 2008. On direct examination, relator testified that he had hurt himself at work and became disabled from July 2005 to the date of the hearing (August 19, 2008); that during this period he had been unable to obtain employment; that during this period he had tried to borrow money to pay the child support from "everybody," including his parents, family friends, brother, and even his ex-wife's father; that he had no collateral to give a bank for a loan; that he was not then paying his attorney; that he lived in a trailer for which a friend paid the rent; that he did not own a car; that he had no medical coverage; and that he did not have the present ability to pay the $20,000 child support arrearage and $8,000 attorney's fees.

On cross-examination, relator testified that he was not totally disabled; that he could answer a telephone; that he had bought and re-sold maybe "one or so" cars; and that he probably had $100 in his pocket. Veglia's counsel called Veglia as a rebuttal witness through whom a Brazoria County "Sheriff's Petition and Notice of Seizure and Intended Forfeiture" was admitted into evidence. Veglia testified that it reflected that in June 2006, relator was found to have $6,639 cash in his pocket and a Ruger .45 caliber pistol, a Marlin .22 caliber firearm, an Ultra High Powered .22 caliber rifle, multiple prescription drugs, and six baggies, believed to contain marijuana.

Relator's testimony that he was not totally disabled, that he could answer a phone, that he had bought and re-sold one or more cars, as well as the evidence in the notice of seizure that in June 2006 he was in possession of three firearms, and was engaged in drug trafficking, tended to discredit and to impeach his testimony that during the period in question, he was un-

able to obtain employment. The trial court reasonably could have concluded that relator could afford to make at least one of the $400 child support payments required under the decree. We hold that, on the basis of the record before this court, relator has not conclusively demonstrated his involuntary inability to comply with every one of his $400 child support payments when they became due. We overrule point of error three.

### C. Offsets Against Child Support

■ In point of error five, relator asserts that the trial court erred in denying him the opportunity to finish testifying relative to the support that he provided to one of his children in 2005, when that child came to live with relator on a full-time, permanent basis. Relator also asserts that it was error to deny him the opportunity to testify to direct payments for child support that he had made to Veglia. Relator has waived this point of error because he did not make an offer of proof regarding these matters. *See* TEX.R. EVID. 103(a)(2) ("Error may not be predicated upon a ruling which . . . excludes evidence unless . . . the substance of the evidence was made known to the court by offer or was apparent from the context within which the questions were asked.").

### Civil, Coercive Confinement Assessment

■ As a civil, coercive measure, the trial court ordered that after relator had completed his punitive confinement, he remain confined from day to day until he paid Veglia the $19,851.73, attorney's fees of $7,735, and court costs. Based upon our February 3, 2009 order, relator was conditionally discharged from jail on February 4, 2009, 11 days before his 180–day sentence of punitive confinement would have ended on August 15, 2009. Because the civil, coercive portion of the trial court's contempt order will not go into effect until relator completes his punitive confinement assessment, relator's assertion, in point of error four, that he is presently unable to comply with it is premature. *See Ex parte Robertson,* 880 S.W.2d 803, 803–04 (Tex. App.-Houston [1st Dist.] 1994, orig. proceeding) ("A relator's current inability to pay does not affect his obligation to serve the criminal contempt portion of his sentence."). We thus do not reach point of error four.

### Conclusion

We remand relator to the custody of the Sheriff of Harris County to serve the balance of his 180–day punitive confinement assessment, without prejudice thereafter to his requesting habeas corpus relief from the civil, coercive portion of the trial court's contempt order.