Kimberly A. SNODGRASS, Appellant,

v.

Michael L. SNODGRASS, Appellee.

In re Kimberly A. Snodgrass, Relator.

Nos. 14–09–00258–CV, 14–09–00766–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Nov. 23, 2010.

Sallee S. Smyth, Richmond, for appellant/relator.

Lloyd D. Stansberry, Alvin, Kelly McClendon, Angleton, for appellee in 14-09-00258-CV.

Kelly McClendon, Angleton, for Real Party in Interest in 14-09-00766-CV.

Panel consists of Justices FROST, BOYCE, and SULLIVAN.

## OPINION

KEM THOMPSON FROST, Justice.

This is a consolidated appeal and mandamus proceeding arising out of an action to enforce the provisions of a divorce decree. The ex-husband sought enforcement by various means including by contempt. The ex-wife challenges the trial court's enforcement order, which includes contempt findings. We conclude that the trial court did not err in denying the ex-wife's motion for clarification and that the ex-wife did not conclusively prove her involuntary inability to obtain refinancing on certain real property. But, we conclude that the trial court erred in the enforcement order by (1) impermissibly modifying the final divorce decree, (2) determining that the property is the ex-husband's separate property, (3) ordering the ex-wife to vacate the property, and (4) ordering the ex-wife to sign a deed conveying to the ex-husband all of her interest in the property.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In April 2008, the trial court signed a final decree in a divorce action between appellant/relator Kimberly A. Snodgrass and appellee/real party in interest Michael L. Snodgrass. The decree is entitled "Agreed Decree of Divorce," and is drafted as if it were an agreed decree. But Kimberly did not agree to its terms, and Kimberly and her counsel did not sign in the spaces provided in the decree for their signatures. Nonetheless, the trial court signed the decree, and no party appealed from that final decree.

The decree dealt with two pieces of real property, which we shall refer to as "Pine Creek" and "Oakbrook" based on the location of the properties. In ordering a just and right division of the parties' marital estate in the decree, the trial court unconditionally awarded Pine Creek to Michael and ordered Kimberly to execute and deliver to Michael a deed to this property by May 3, 2008. Kimberly did not execute this deed as ordered.

In its division of the parties' marital estate, the trial court awarded Oakbrook to Kimberly "upon the refinancing of [Oakbrook] on or before May 24, 2008." Record title to Oakbrook and the financing for

this property were in Michael's name alone. In the decree, the trial court ordered Kimberly (1) to obtain refinancing of the mortgage on Oakbrook on or before May 24, 2008 (the "Refinancing Deadline"), and (2) to make the payments on the mortgage on Oakbrook beginning with the June 2008 payment. The trial court also ordered Michael to pay Kimberly $25,000 at the closing of the new financing on Oakbrook. Kimberly did not obtain refinancing of the Oakbrook mortgage on or before the Refinancing Deadline, nor did she make the mortgage payments on Oakbrook starting in June 2008.

In October 2008, Michael filed a petition to enforce the decree and hold Kimberly in contempt based on nine alleged violations of the decree. Michael asked the trial court to hold Kimberly in contempt of court and to assess punishment at a $500 fine and six months' confinement in the county jail for each contempt violation, with each period of confinement to run concurrently. Michael also asked the court to exercise its civil contempt powers, requesting that Kimberly be confined in the county jail until she complied with the decree. Michael asked that, if the court found that any part of the decree was not specific enough to be enforced by contempt, that the court enter an order clarifying the decree and specifying the duties imposed on Kimberly.

Kimberly filed an answer asserting that the decree could not be enforced because it is ambiguous given that in it the court does not explain what happens if Kimberly cannot obtain refinancing of the Oakbrook mortgage. Kimberly stated that she had made numerous attempts to obtain refinancing but was unable to do so. Kimberly also filed a motion for clarification, asserting that the relevant parts of the decree are not specific enough to be enforceable by contempt and should be

clarified by the trial court. Kimberly asked that the court clarify what should happen if she is unable to refinance the mortgage on Oakbrook, which she asserted was awarded to her in the decree.

On December 1, 2008, the court conducted a bench trial in the enforcement proceeding. After hearing testimony from Michael, Kimberly, and Michael's lawyer, the trial court granted Michael's request for enforcement in an order in which the trial court did the following:

- found Kimberly guilty of nine violations of the divorce decree,
- held Kimberly in contempt for these nine violations but did not punish her with any fines or order her confined in the county jail,
- found that on December 1, 2008, Kimberly had the ability to comply with the trial court's decree,
- found that the decree is clear and specific and denied Kimberly's motion for clarification,
- found that the "purported conveyance" of Oakbrook is a nullity,
- confirmed that Oakbrook is Michael's separate property,
- ordered Kimberly to pay $2,600 in attorney's fees to Michael's attorney,
- ordered Kimberly to sign the Pine Creek deed,
- ordered Kimberly to vacate Oakbrook, and
- ordered Kimberly to sign a deed conveying to Michael all of her interest in Oakbrook.

Kimberly has appealed the trial court's final enforcement order in the suit to enforce the divorce decree ("Enforcement Order"). *See* TEX. FAM.CODE ANN. § 9.001(b) (West 2006) (stating that, except as otherwise provided by Chapter 9 of the Family Code, a suit to enforce a divorce decree is governed by the Texas

Rules of Civil Procedure applicable to the filing of an original lawsuit). Kimberly also has filed a petition seeking mandamus relief regarding the trial court's contempt rulings. This court has consolidated these two proceedings.

## II. ANALYSIS

### A. Did the trial court err by denying Kimberly's motion to clarify and by allegedly modifying the divorce decree?

In her first and second appellate issues, Kimberly asserts that the trial court erred in denying her motion to clarify the divorce decree because the decree is ambiguous as to the disposition of Oakbrook and Michael's obligation to pay Kimberly $25,000 in the event that Kimberly is unable to obtain refinancing of the Oakbrook mortgage. In her third appellate issue, Kimberly asserts that, in the Enforcement Order, the trial court erroneously modified the final decree to change the characterization of Oakbrook from community property to Michael's separate property. In her fifth appellate issue, Kimberly argues that Michael's assertion at trial that Oakbrook is his separate property constituted an impermissible collateral attack on the final divorce decree.

■■■ To resolve these issues, we must construe the divorce decree. We interpret this decree as we do other court judgments. *Hagen v. Hagen*, 282 S.W.3d 899, 901 (Tex.2009). We construe the decree as a whole to harmonize and give effect to the entire decree. *Id.* If the decree is unambiguous, this court must adhere to the literal language used. *Id.* If the decree is ambiguous, the decree is interpreted by reviewing both the decree as a whole and the record. *Id.* Whether a divorce decree is ambiguous is a question of law. *Id.* at 901–02.

■■■ In pertinent part, the trial court states the following in the decree:

*Division of Marital Estate*

The Court finds that the following is a just and right division of the parties' marital estate, having due regard for the rights of each party and the children of the marriage.

*Property Awarded to Husband*

IT IS ORDERED AND DECREED that [Michael] is awarded the following as his sole and separate property, and [Kimberly] is divested of all right, title, interest, and claim in and to that property:

. . .

*Property Awarded to Wife*

IT IS ORDERED AND DECREED that [Kimberly] is awarded the following as her sole and separate property, and [Michael] is divested of all right, title, interest, and claim in and to that property:

W–1. Upon the refinancing of [Oakbrook] on or before [the Refinancing Deadline], [Kimberly] is awarded [Oakbrook].

. . .

W–11. $25,000.00 payable by [Michael] to [Kimberly] to be paid by cashiers [sic] check at the closing of [Kimberly's] refinancing of [Oakbrook], which is awarded to [Kimberly] herein.

. . .

*Debt Awarded to Wife*

IT IS ORDERED AND DECREED that [Kimberly] shall pay, as part of the division of the estate of the parties, and shall indemnify and hold [Michael] and his property harmless from any failure to so discharge, these items:

. . .

W–4. Beginning June, 2008, the outstanding mortgage on [Oakbrook] which

[Kimberly] is awarded herein. IT IS FURTHER ORDERED that [Kimberly] shall refinance the mortgage on [Oakbrook] on or before [the Refinancing Deadline] and both parties are ORDERED to appear at the mortgage company to sign all documents required to effectuate the refinancing of the property. Further, it is ORDERED that [Kimberly] shall give [Michael] at least three days notice of the closing date of the property, at which time [Michael] shall deliver a cashier's check in the amount of $25,000 to [Kimberly] for the refinancing and closing of the house.

In her first two issues, Kimberly asserts that the decree is ambiguous regarding the disposition of Oakbrook and Michael's obligation to pay Kimberly $25,000. The trial court determined that its decree was clear and specific in this regard. It is undisputed that Kimberly did not obtain refinancing of the Oakbrook mortgage by the Refinancing Deadline. In this event, applying what it considered to be the unambiguous language of the decree, the trial court determined that Michael no longer had any obligation to pay Kimberly $25,000 and that Michael is now entitled to all right, title, and interest in Oakbrook, subject to the existing mortgage lien.

■ In a divorce decree, the trial court "shall order a division of the estate of the parties in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage." TEX. FAM.CODE ANN. § 7.001 (West 2006). The trial court divides community property; it cannot divide separate property. *See Knight v. Knight*, 301 S.W.3d 723, 728 & n. 5 (Tex. App.-Houston [14th Dist.] 2009, no pet.); *Sharma v. Routh*, 302 S.W.3d 355, 360 (Tex.App.-Houston [14th Dist.] 2009, no pet.). Under the unambiguous language of the decree, the trial court characterized Oakbrook as community property and included it in the trial court's just and right division of the community property.

In addition, under the unambiguous language of the decree, if Kimberly had obtained refinancing of the mortgage on Oakbrook, she would have been entitled to all of the community's interest in Oakbrook as well as a $25,000 contribution from Michael towards the refinancing at the closing of the refinancing transaction. In this appeal, we must determine what the decree provides regarding Oakbrook if Kimberly does not obtain refinancing of the mortgage on this property.

In several parts of the decree, the trial court states that Oakbrook "is awarded to [Kimberly] herein." However, we conclude that these statements are not themselves awards of Oakbrook to Kimberly; instead, they are references to paragraph W–1 of the decree's "Property Awarded to Wife" section. But under the unambiguous language of this paragraph, the trial court awarded Oakbrook only if Kimberly obtained refinancing of the Oakbrook mortgage by the Refinancing Deadline. In this paragraph, the trial court did not make any award if Kimberly failed to obtain refinancing of this mortgage by the Refinancing Deadline. Indeed, after carefully reviewing the entire decree, we conclude that no language in the decree addresses the disposition of Oakbrook if Kimberly fails to obtain refinancing of the Oakbrook mortgage by this date. The decree does not specify a general methodology for dividing the community property, and it does not contain any provision addressing the division of community property that is not specifically divided in the decree.

Even though a divorce decree is final, the trial court still may not have divided all of the community property under the decree's unambiguous language. *See* TEX.

FAM.CODE ANN. § 9.201(a) (West 2006); *Koepke v. Koepke,* 732 S.W.2d 299, 300 (Tex.1987); *Busby v. Busby,* 457 S.W.2d 551, 554–55 (Tex.1970). We conclude that the decree is unambiguous and that the trial court did not divide or dispose of the Oakbrook community property in the event that Kimberly failed to obtain refinancing of the Oakbrook mortgage by the Refinancing Deadline. *See Reiss v. Reiss,* 118 S.W.3d 439, 441–43 (Tex.2003); *Koepke,* 732 S.W.2d at 300; *Busby,* 457 S.W.2d at 554–55. We also conclude that, under the plain meaning of the decree, Michael has no obligation under the decree to contribute $25,000 to the refinancing at closing because Kimberly failed to obtain refinancing of this property's mortgage by the Refinancing Deadline. *See Reiss,* 118 S.W.3d at 441–43; *Koepke,* 732 S.W.2d at 300; *Busby,* 457 S.W.2d at 554–55. We conclude that the trial court did not err in denying Kimberly's motion for clarification. *See Strahan v. Strahan,* No. 01–01–00614–CV, 2003 WL 22723432, at *10–11 (Tex.App.-Houston [1st Dist.] Nov. 20, 2003, no pet.) (mem. op.) (holding trial court did not err in denying motion for clarification regarding unambiguous decree). Accordingly, we overrule Kimberly's first and second appellate issues.[1]

■ In the Enforcement Order, however, the trial court apparently determined that, under the decree, if Kimberly fails to timely obtain refinancing of the Oakbrook mortgage, Kimberly is not entitled to any interest in Oakbrook. In the Enforcement Order, the trial court determined that Oakbrook is Michael's separate property, ordered Kimberly to vacate Oakbrook, and ordered Kimberly to sign a deed conveying to Michael all of her interest in Oakbrook. The trial court had the power to render further orders to enforce the property division in the divorce decree. *See* TEX. FAM.CODE ANN. § 9.006(a) (West 2006). But the trial court was not authorized to amend, modify, alter, or change this property division. *See id.* § 9.007(a) (West 2006); *Shanks v. Treadway,* 110 S.W.3d 444, 449 (Tex.2003). Under the unambiguous language of the decree, the trial court did not in this decree do any of the following: (1) order that Kimberly would forfeit all right to any interest in Oakbrook if she failed to obtain refinancing on the Oakbrook mortgage, (2) determine that Oakbrook was Michael's separate property, (3) order that the trial court's characterization of Oakbrook would change from community property to separate property if Kimberly failed to obtain refinancing of the Oakbrook mortgage, (4) order that Kimberly is not entitled to any interest in Oakbrook if she fails to obtain refinancing for the Oakbrook mortgage, or (5) order that Kimberly must vacate Oakbrook if she fails to obtain refinancing of the Oakbrook mortgage.[2] Therefore, we conclude that in

---

1. Kimberly argues that the trial court's conditional award of Oakbrook to her is a conditional or contingent award that makes the decree ambiguous. Kimberly cites *Cason v. Cason* in support of this proposition. *See* No. 09–04–538–CV, 2005 WL 2092528, at *1 (Tex. App.-Beaumont Aug. 31, 2005, no pet.). The *Cason* court stated that a trial court's judgment generally should be certain and definite rather than conditional or contingent. *See id.* The *Cason* court acknowledged that some conditional or contingent awards are allowed in judgments. *See id.* Nonetheless, the *Cason* court determined that the *Cason* trial court's contingent award was an abuse of discretion, which the *Cason* court reversed on direct appeal. *See id.* We conclude that *Cason* is not on point because it involved the issue of the propriety of a contingent award in the context of a direct appeal from a divorce decree, rather than an appeal from an order enforcing a final decree, which can no longer be modified.

2. Michael relies upon *In re Kerr. See* No. 14–08–00529–CV, 2009 WL 3000977, at *1–2 (Tex.App.-Houston [14th Dist.] Sept. 22, 2009, no pet.). However, that case is not on point

the Enforcement Order, the trial court erred by (1) impermissibly modifying the final divorce decree, (2) determining that Oakbrook is Michael's separate property, (3) ordering Kimberly to vacate Oakbrook, and (4) ordering Kimberly to sign a deed conveying to Michael all of her interest in Oakbrook.[3] *See* TEX. FAM.CODE ANN. § 9.007(a); *Shanks*, 110 S.W.3d at 449. Accordingly, we sustain Kimberly's third and fifth appellate issues.[4]

## B. Is Kimberly entitled to mandamus relief as to the trial court's finding that she is in contempt of court for failing to obtain refinancing of the Oakbrook mortgage?

■ In certain instances, a trial court may enforce a divorce decree by contempt. *See* TEX. FAM.CODE ANN. § 9.012 (West 2006). In enforcing a divorce decree, the trial court also may render further orders, render a money judgment, and award costs and reasonable attorney's fees for the enforcement action. *See* TEX. FAM. CODE ANN. § 9.006-.014. To the extent that a trial court uses its contempt power, this court lacks appellate jurisdiction to review the trial court's action, but this court may review the action in a habeas corpus proceeding, if there is a current restraint on relator's liberty, or in a mandamus proceeding, if there is no such restraint. *See Rosser v. Squier*, 902 S.W.2d

962, 962 (Tex.1995); *In re Evans*, 130 S.W.3d 472, 487 (Tex.App.-Houston [14th Dist.] 2004, orig. proceeding). The trial court held Kimberly in contempt of court based on nine violations of the divorce decree. Though Michael asked the trial court to punish these violations with the criminal–contempt penalties—fines and confinement in jail—the trial court declined to do so. *See* TEX. GOV'T CODE ANN. § 21.002(b) (West 2004). The trial court also declined to compel obedience to the divorce decree through civil contempt. Therefore, we conclude that the trial court's findings and judgment that Kimberly was in contempt of court are contempt portions of the trial court's order, but that the remainder of the trial court's order does not involve contempt and is reviewable by appeal. *See id.* Therefore, we conclude that Kimberly has an adequate remedy at law regarding issues two through eight in her petition for writ of mandamus, in which she challenges non-contempt portions of the order. Accordingly, we overrule these issues.

■ In the first issue in her mandamus petition, Kimberly asserts that the trial court abused its discretion by holding her in contempt for her failure to obtain refinancing of the Oakbrook mortgage because the uncontroverted evidence established that she had no ability to do so.

---

because it involved an enforcement order in which the trial court rendered a money judgment in favor of the ex-wife for damages caused by the ex-husband's failure to comply with the express terms of the divorce decree. *See id.; see also* TEX. FAM.CODE ANN. § 9.010.

3. Both Kimberly and Michael cite *Torres v. Sierra.* No. 04–08–00516–CV, 2009 WL 331883, at *1–2 (Tex.App.-San Antonio Feb. 11, 2009, no pet.). Though that case involved an award of community property to the ex-husband conditioned on a post-decree payment by the ex-husband, it did not involve an enforcement order that subsequently changed

the characterization of the property from community property to one party's separate property. *See id.* In addition, the *Torres* court focused on the ex-husband's argument that the contingent award of property to him was effective even though he did not make the payment that was the condition precedent to this award. *See id.* We conclude that *Torres* is not on point.

4. Having sustained these two appellate issues, we need not and do not address Kimberly's fourth, sixth, seventh, eighth, and ninth appellate issues.

Kimberly asserts that the trial court erred in holding her in contempt in this regard because she satisfied her burden of proving that compliance was impossible. An involuntary inability to comply with a court order is a valid defense to contempt; however, Kimberly had the burden of proving this defense. *See Ex parte Rosser*, 899 S.W.2d 382, 385–87 (Tex.App.-Houston [14th Dist.] 1995, orig. proceeding). To sustain the first issue in her mandamus petition, this court must conclude that Kimberly conclusively proved in the trial court her involuntary inability to obtain refinancing of the Oakbrook mortgage. *See id.*

At the trial in the enforcement action, Michael testified as follows:

- Michael called his friend Mark, who is a mortgage broker, and Michael asked Mark to try to help Kimberly obtain refinancing of the Oakbrook mortgage.

- Michael's friend was not able to do anything for Kimberly in that regard.

- Michael is not completely familiar with Kimberly's past income because Kimberly did not file income tax returns.

- Because Michael could not get Kimberly's tax information, Michael filed either a head-of-household or a married-filing-separately tax return for the last six years of his marriage to Kimberly.

- Oakbrook currently is financed in Michael's name only with an adjustable rate mortgage with a high interest rate.

- Michael is not currently in a position to obtain refinancing of the Oakbrook mortgage.

- Kimberly "can't refinance the house."

At the trial on the enforcement action, Kimberly testified as follows:

- Kimberly thought that she did not have to pay the mortgage on Oakbrook unless she obtained refinancing.

- Kimberly has not "been able to be refinanced."

- Kimberly had an opportunity to sign the deed to Pine Creek but refused to do so.

- Kimberly told Michael in May 2008, that she was attempting to obtain refinancing.

- Michael directed Kimberly to his friend Mark, who tried to help Kimberly but was unsuccessful.

- The only income Kimberly generates is from her recruiting business, which does not have regular income. Her income from this business was $20,000 in 2008 and $58,000 in 2007.

- The last business tax return that Kimberly filed was for the 2006 tax year, and Kimberly thinks the last personal tax return she filed was for the 2004 tax year.

- Kimberly could not get refinanced because (1) she owns a business, (2) she needs to apply for refinancing based on "stated income," (3) her debt-to-credit ratio is not good enough to apply based on stated income, and (4) her credit was "just average."

- In addition to Mark, Kimberly has also talked to a couple of other mortgage brokers. Mark said that he thought Kimberly could obtain refinancing based on stated income, but the other brokers told Kimberly "there was absolutely no way you can do stated income right now."

- Kimberly has made numerous attempts to refinance.

- There is no way that Kimberly can borrow money to put more money down on the refinancing of the house.

- Kimberly does not have any family members who could co-sign her loan.
- Kimberly cannot make the payments on the current mortgage on Oakbrook.
- Kimberly has made three attempts to obtain refinancing, one of which was in November 2008. According to Kimberly, if a person makes too many unsuccessful attempts to obtain financing then that makes the person's credit score even worse.
- One of the steps that was suggested to Kimberly was that she start filing tax returns. In response to that advice, the only return that Kimberly has filed is her business tax return for the 2006 tax year.
- Though in the past some lenders accepted debtor's statements of their income, lenders now need to see the debtors' tax returns before they will provide a loan.
- Kimberly has not filed all her tax returns.
- Kimberly currently pays $1,200 per month for stalls for her horses. She is trying to sell the horses, which are collateral to secure payment for the horse stalls.
- The only income Kimberly is receiving right now is child support from Michael. Kimberly has thought about selling her business and maybe getting some other kind of employment, and she is "looking into that at this time."

Although the record contains evidence that Kimberly is experiencing economic difficulties, the record also contains evidence that she refused without justification to sign the deed to Pine Creek as ordered by the trial court. In addition, though told that, as part of the refinancing process, she would need to document her past income to potential lenders through her income tax returns, Kimberly chose not to file a business return for 2007 and not to file personal returns for at least 2005 through 2007. Even though the trial court ordered her to obtain refinancing of the Oakbrook mortgage by the Refinancing Deadline, according to her own testimony, she tried to obtain refinancing no more than two times before this date. Kimberly's business was not doing well throughout 2008, and the trial court reasonably could have concluded that Kimberly did not make significant efforts to obtain other employment. Kimberly proffered no expert testimony that someone in her situation could not obtain refinancing no matter what she might do to try to obtain it. Nor did Kimberly submit written evidence regarding any attempts to obtain refinancing. She testified that she made a total of three "attempts" to obtain refinancing and that two of these attempts were made before the Refinancing Deadline. But Kimberly gave no details as to what these attempts entailed, nor did she identify any lenders from whom she sought to obtain credit. The trial court was free to disbelieve the testimony that Kimberly cites as supporting her defense. See *Ex parte Rosser*, 899 S.W.2d at 386.

On this record, we conclude that Kimberly did not conclusively prove her involuntary inability to obtain refinancing of the Oakbrook mortgage. See *Ex parte Sanchez*, 703 S.W.2d 955, 958–59 (Tex.1986) (rejecting involuntary inability defense to contempt and stating "[w]hat is in dispute is whether Sanchez voluntarily put himself in a position where it would be impossible for him to comply with the court order"); *Ex parte Rosser*, 899 S.W.2d at 385–87 (holding that ex-husband failed to conclusively prove involuntary inability to comply with order regarding ex-wife's visitation with their daughter); *In re Corder*, 332 S.W.3d 498, 502–03 (Tex.App.-Houston [1st Dist.] 2009, orig. proceeding) (holding that ex-husband failed to conclusively prove involuntary inability to comply with order regarding child-support payments). Ac-

cordingly, we overrule Kimberly's first mandamus issue and deny her mandamus petition.

 In an original proceeding regarding a contempt order, this court will grant relief if a relator shows that the order underlying the contempt is void, or if the relator shows that the contempt order itself is void. *See In re Johnson*, No. 14–09–00775–CV, 2009 WL 4345405, at *2 (Tex.App.-Houston [14th Dist] Dec. 3, 2009, orig. proceeding) (mem. op.). A contempt order may be void for various reasons, including a showing by the relator that the evidence is legally insufficient to support a finding beyond a reasonable doubt that the relator violated a reasonably specific order with willful intent. *See In re Long*, 984 S.W.2d 623, 626–27 (Tex. 1999) (stating that court cannot in a mandamus proceeding weigh the evidence supporting contempt findings but that court can determine whether a contempt judgment is void because there is no evidence of contempt); *Ex parte Rosser*, 899 S.W.2d at 385 (noting that a contempt conviction for disobedience to a court order requires proof beyond a reasonable doubt of (1) a reasonably specific order, (2) a violation of the order, and (3) the willful intent to violate the order). But, the relator bears the burden of showing entitlement to relief, and this court presumes that the contempt order and the order underlying it are valid, unless the relator discharges the burden of showing otherwise. *See In re Johnson*, 2009 WL 4345405, at *2.

In these proceedings, Kimberly has not asserted or argued that the divorce decree is void or that any of the contempt portions of the trial court's order are void (hereinafter, "Contempt Order"). But, Kimberly does argue that the evidence conclusively proved her involuntary inability to comply with the trial court's order that she obtain refinancing of the Oakbrook mortgage, and if the evidence con-

clusively proved such an inability, then the contempt finding in this regard would be void. *See In re Corder*, 332 S.W.3d at 502–03. As explained above, the evidence did not conclusively prove an involuntary inability to comply. Because Kimberly has not asserted any other argument that would support a determination by this court that the Contempt Order is void, any issues in this regard are not before us. In the case under review, we address only issues on appeal from the Enforcement Order and the mandamus issue regarding the defense of involuntary inability to comply.

The trial court did not assess any criminal-contempt penalties, nor did the trial court subject Kimberly to civil contempt. Nonetheless, further proceedings will be taking place in the trial court in the future. In this context, we emphasize that in this opinion we do not address any other issues that might be raised as to whether the Contempt Order is void.

### CONCLUSION

The trial court did not err in denying Kimberly's motion for clarification. However, in the Enforcement Order, the trial court erred by (1) impermissibly modifying the final divorce decree, (2) determining that Oakbrook is Michael's separate property, (3) ordering Kimberly to vacate Oakbrook, and (4) ordering Kimberly to sign a deed conveying to Michael all of her interest in Oakbrook. Accordingly, on appeal, we reverse the Enforcement Order and remand for further proceedings consistent with this opinion. The only issue regarding contempt raised in Kimberly's mandamus petition lacks merit. Therefore, we deny Kimberly's mandamus petition.

SULLIVAN, J., not participating.