Reversed and Remanded; Petition for Writ of Mandamus
Denied; and Opinion filed November 23, 2010.

                                                                                                                                                            

                                                                                                                                                            

In The

Fourteenth Court of
Appeals

________________________

 

NO. 14-09-00258-CV

____________

 

KIMBERLY A. SNODGRASS, Appellant

 

V.

 

MICHAEL L. SNODGRASS, Appellee

 

 



On Appeal from the 300th District Court

Brazoria County, Texas

Trial Court Cause No. 42960

 

 



NO. 14-09-00766-CV

____________

 

IN RE KIMBERLY A. SNODGRASS, Relator

 

 

 



ORIGINAL PROCEEDING

WRIT OF MANDAMUS

 

 

 



O P I N I O N

            This is a consolidated
appeal and mandamus proceeding arising out of an action to enforce the
provisions of a divorce decree.  The ex-husband sought enforcement by various
means including by contempt.  The ex-wife challenges the trial court’s
enforcement order, which includes contempt findings.  We conclude that the
trial court did not err in denying the ex-wife’s motion for clarification and
that the ex-wife did not conclusively
prove her involuntary inability to obtain refinancing on certain real
property.  But, we conclude that the trial court erred in the enforcement order
by (1) impermissibly modifying the final divorce decree, (2) determining that
the property is the ex-husband’s separate property, (3) ordering the ex-wife to vacate the
property, and (4) ordering the ex-wife to sign a deed conveying to the
ex-husband all of her interest in the property.  

 

I.  Factual and Procedural
Background

 

            In April 2008, the trial
court signed a final decree in a divorce action between appellant/relator
Kimberly A. Snodgrass and appellee/real party in interest Michael L.
Snodgrass.  The decree is entitled “Agreed Decree of Divorce,” and is drafted
as if it were an agreed decree.  But Kimberly did not agree to its terms, and
Kimberly and her counsel did not sign in the spaces provided in the decree for
their signatures.  Nonetheless, the trial court signed the decree, and no party
appealed from that final decree.  

            The decree dealt with two
pieces of real property, which we shall refer to as “Pine Creek” and “Oakbrook”
based on the location of the properties.  In ordering a just and right division
of the parties’ marital estate in the decree, the trial court unconditionally
awarded Pine Creek to Michael and ordered Kimberly to execute and deliver to
Michael a deed to this property by May 3, 2008.  Kimberly did not execute this
deed as ordered.  

            In its division of the
parties’ marital estate, the trial court awarded Oakbrook to Kimberly “upon the
refinancing of [Oakbrook] on or before May 24, 2008.”  Record title to Oakbrook
and the financing for this property were in Michael’s name alone.  In the
decree, the trial court ordered Kimberly (1) to obtain refinancing of the
mortgage on Oakbrook on or before May 24, 2008 (the “Refinancing Deadline”),
and (2) to make the payments on the mortgage on Oakbrook beginning with the
June 2008 payment.  The trial court also ordered Michael to pay Kimberly
$25,000 at the closing of the new financing on Oakbrook.  Kimberly did not obtain
refinancing of the Oakbrook mortgage on or before the Refinancing Deadline, nor
did she make the mortgage payments on Oakbrook starting in June 2008.  

            In October 2008, Michael
filed a petition to enforce the decree and hold Kimberly in contempt based on
nine alleged violations of the decree.  Michael asked the trial court to hold
Kimberly in contempt of court and to assess punishment at a $500 fine and six
months’ confinement in the county jail for each contempt violation, with each
period of confinement to run concurrently.  Michael also asked the court to
exercise its civil contempt powers, requesting that Kimberly be confined in the
county jail until she complied with the decree.  Michael asked that, if the
court found that any part of the decree was not specific enough to be enforced
by contempt, that the court enter an order clarifying the decree and specifying
the duties imposed on Kimberly.

            Kimberly filed an answer
asserting that the decree could not be enforced because it is ambiguous given
that in it the court does not explain what happens if Kimberly cannot obtain
refinancing of the Oakbrook mortgage.  Kimberly stated that she had made
numerous attempts to obtain refinancing but was unable to do so.  Kimberly also
filed a motion for clarification, asserting that the relevant parts of the
decree are not specific enough to be enforceable by contempt and should be
clarified by the trial court.  Kimberly asked that the court clarify what
should happen if she is unable to refinance the mortgage on Oakbrook, which she
asserted was awarded to her in the decree. 

            On December 1, 2008, the
court conducted a bench trial in the enforcement proceeding.  After hearing
testimony from Michael, Kimberly, and Michael’s lawyer, the trial court granted
Michael’s request for enforcement in an order in which the trial court did the following:

 

·       
found Kimberly guilty of nine
violations of the divorce decree,

·       
held Kimberly in contempt for
these nine violations but did not punish her with any fines or order her
confined in the county jail,

·       
found that on December 1, 2008,
Kimberly had the ability to comply with the trial court’s decree,

·       
found that the decree is clear and
specific and denied Kimberly’s motion for clarification,

·       
found that the “purported
conveyance” of Oakbrook is a nullity,

·       
confirmed that Oakbrook is
Michael’s separate property,

·       
ordered Kimberly to pay $2,600 in
attorney’s fees to Michael’s attorney,

·       
ordered Kimberly to sign the Pine
Creek deed,

·       
ordered Kimberly to vacate
Oakbrook, and 

·       
ordered Kimberly to sign a deed conveying
to Michael all of her interest in Oakbrook.

 

            Kimberly has appealed the
trial court’s final enforcement order in the suit to enforce the divorce decree
(“Enforcement Order”).  See Tex.
Fam. Code Ann. § 9.001(b) (West 2006) (stating that, except as otherwise
provided by Chapter 9 of the Family Code, a suit to enforce a divorce decree is
governed by the Texas Rules of Civil Procedure applicable to the filing of an
original lawsuit).  Kimberly also has filed a petition seeking mandamus relief
regarding the trial court’s contempt rulings.  This court has consolidated
these two proceedings.

II.  Analysis

A.        Did the trial court err by denying
Kimberly’s motion to clarify and by allegedly modifying the divorce decree?

 

            In her first and second
appellate issues, Kimberly asserts that the trial court erred in denying her
motion to clarify the divorce decree because the decree is ambiguous as to the
disposition of Oakbrook and Michael’s obligation to pay Kimberly $25,000 in the
event that Kimberly is unable to obtain refinancing of the Oakbrook mortgage.  In
her third appellate issue, Kimberly asserts that, in the Enforcement Order, the
trial court erroneously modified the final decree to change the
characterization of Oakbrook from community property to Michael’s separate
property.  In her fifth appellate issue, Kimberly argues that Michael’s
assertion at trial that Oakbrook is his separate property constituted an
impermissible collateral attack on the final divorce decree.

            To resolve these issues,
we must construe the divorce decree.  We interpret this  decree as we do other court
judgments.  Hagen v. Hagen, 282 S.W.3d 899, 901 (Tex. 2009).  We
construe the decree as a whole to harmonize and give effect to the entire
decree.  Id.  If the decree is unambiguous, this court must adhere to
the literal language used.  Id.  If the decree is ambiguous, the decree
is interpreted by reviewing both the decree as a whole and the record.  Id. 
Whether a divorce decree is ambiguous is a question of law.  Id. at
901–02.  

            In pertinent part, the
trial court states the following in the decree:

Division of Marital Estate

            The
Court finds that the following is a just and right division of the parties’
marital estate, having due regard for the rights of each party and the children
of the marriage.

 

Property Awarded to Husband

 

            IT IS ORDERED AND DECREED that [Michael]
is awarded the following as his sole and separate property, and [Kimberly] is
divested of all right, title, interest, and claim in and to that property:

 

. . . 

 

Property Awarded to Wife

 

            IT IS ORDERED AND DECREED that [Kimberly]
is awarded the following as her sole and separate property, and [Michael] is
divested of all right, title, interest, and claim in and to that property:

 

            W-1.   Upon the refinancing of [Oakbrook]
on or before [the Refinancing Deadline], [Kimberly] is awarded [Oakbrook].

 

. . . 

 

            W-11. $25,000.00 payable by [Michael] to
[Kimberly] to be paid by cashiers [sic] check at the closing of [Kimberly’s]
refinancing of [Oakbrook], which is awarded to [Kimberly] herein.

 

. . .

 

Debt Awarded to Wife

 

            IT IS ORDERED AND DECREED that [Kimberly]
shall pay, as part of the division of the estate of the parties, and shall indemnify
and hold [Michael] and his property harmless from any failure to so discharge,
these items:

 

. . .

 

            W-4.   Beginning June, 2008, the
outstanding mortgage on [Oakbrook] which [Kimberly] is awarded herein.  IT IS
FURTHER ORDERED that [Kimberly] shall refinance the mortgage on [Oakbrook] on
or before [the Refinancing Deadline] and both parties are ORDERED to appear at
the mortgage company to sign all documents required to effectuate the
refinancing of the property.  Further, it is ORDERED that [Kimberly] shall give
[Michael] at least three days notice of the closing date of the property, at
which time [Michael] shall deliver a cashier’s check in the amount of $25,000
to [Kimberly] for the refinancing and closing of the house.  

 

            In her first two issues,
Kimberly asserts that the decree is ambiguous regarding the disposition of
Oakbrook and Michael’s obligation to pay Kimberly $25,000.  The trial court
determined that its decree was clear and specific in this regard.  It is
undisputed that Kimberly did not obtain refinancing of the Oakbrook mortgage by the Refinancing Deadline. 
In this event, applying what it considered to be the unambiguous language of
the decree, the trial
court determined that Michael no longer had any obligation to pay Kimberly $25,000
and that Michael is now entitled to all right, title, and interest in Oakbrook,
subject to the existing mortgage lien.  

            In a divorce decree, the
trial court “shall order a division of the estate
of the parties in a manner that the court deems just and right, having due
regard for the rights of each party and any children of the marriage.”  Tex. Fam. Code Ann. § 7.001 (West
2006).  The trial court divides community property; it cannot divide separate
property.  See Knight v. Knight, 301 S.W.3d 723, 728 & n.5 (Tex.
App.—Houston [14th Dist.] 2009, no pet.);  Sharma v. Routh, 302 S.W.3d
355, 360 (Tex. App.—Houston [14th Dist.] 2009, no pet.).  Under the unambiguous language of the
decree, the trial court characterized Oakbrook as community property and
included it in the trial court’s just and right division of the community
property.  

            In addition, under the
unambiguous language of the decree, if Kimberly had obtained refinancing of the
mortgage on Oakbrook, she would have been entitled to all of the community’s
interest in Oakbrook as well as a $25,000 contribution from Michael towards the
refinancing at the closing of the refinancing transaction.  In this appeal, we
must determine what the decree provides regarding Oakbrook if Kimberly does not
obtain refinancing of the mortgage on this property.  

            In several parts of the
decree, the trial court states that Oakbrook “is awarded to [Kimberly]
herein.”  However, we conclude that these statements are not themselves awards
of Oakbrook to Kimberly; instead, they are references to paragraph W-1 of the
decree’s “Property Awarded to Wife” section.  But under the unambiguous
language of this paragraph, the trial court awarded Oakbrook only if Kimberly obtained
refinancing of the Oakbrook mortgage by the Refinancing Deadline.  In this
paragraph, the trial court did not make any award if Kimberly failed to obtain
refinancing of this mortgage by the Refinancing Deadline.  Indeed, after
carefully reviewing the entire decree, we conclude that no language in the
decree addresses the disposition of Oakbrook if Kimberly fails to obtain
refinancing of the Oakbrook mortgage by this date.  The decree does not specify
a general methodology for dividing the community property, and it does not
contain any provision addressing the division of community property that is not
specifically divided in the decree.  

            Even though a divorce
decree is final, the trial court still may not have divided all of the
community property under the decree’s unambiguous language.  See Tex. Fam. Code Ann. § 9.201(a) (West
2006); Koepke v. Koepke, 732 S.W.2d 299, 300 (Tex. 1987); Busby v.
Busby, 457 S.W.2d 551, 554–55 (Tex. 1970).  We conclude that the decree is
unambiguous and that the trial court did not divide or dispose of the Oakbrook
community property in the event that Kimberly failed to obtain refinancing of
the Oakbrook mortgage by the Refinancing Deadline.  See Reiss v. Reiss, 118
S.W.3d 439, 441–43 (Tex. 2003); Koepke, 732 S.W.2d at 300; Busby,
457 S.W.2d at 554–55.  We also conclude that, under the plain meaning of the
decree, Michael has no obligation under the decree to contribute $25,000 to the
refinancing at closing because Kimberly failed to obtain refinancing of this
property’s mortgage by the Refinancing Deadline.  See Reiss, 118 S.W.3d at
441–43; Koepke, 732 S.W.2d at 300; Busby, 457 S.W.2d at 554–55.   We
conclude that the trial court did not err in denying Kimberly’s motion for
clarification.  See Strahan v. Strahan, No. 01-01-00614-CV, 2010 WL
22723432, at *10–11 (Tex. App.—Houston [1st Dist.] Nov. 20, 2003, no pet.)
(mem. op.) (holding trial court did not err in denying motion for clarification
regarding unambiguous decree).  Accordingly, we overrule Kimberly’s first and
second appellate issues.[1] 


            In the Enforcement Order,
however, the trial court apparently determined that, under the decree, if
Kimberly fails to timely obtain refinancing of the Oakbrook mortgage, Kimberly
is not entitled to any interest in Oakbrook.  In the Enforcement Order, the trial
court determined that Oakbrook is Michael’s separate property, ordered Kimberly to vacate Oakbrook,
and ordered Kimberly to sign a deed conveying to Michael all of her interest in
Oakbrook.  The trial court had the power to render
further orders to enforce the property division in the divorce decree. See Tex.
Fam. Code Ann. § 9.006(a) (West 2006).  But the trial court was not authorized to
amend, modify, alter, or change this property division.  See id. § 9.007(a)
(West 2006); Shanks
v. Treadway, 110 S.W.3d 444, 449 (Tex. 2003).  Under the unambiguous
language of the decree, the trial court did not in this decree do any of the
following: (1) order that Kimberly would forfeit all right to any interest in
Oakbrook if she failed to obtain refinancing on the Oakbrook mortgage, (2)
determine that Oakbrook was Michael’s separate property, (3) order that the
trial court’s characterization of Oakbrook would change from community property
to separate property if Kimberly failed to obtain refinancing of the Oakbrook
mortgage, (4) order that Kimberly is not entitled to any interest in Oakbrook
if she fails to obtain refinancing for the Oakbrook mortgage, or (5) order that
Kimberly must vacate Oakbrook if she fails to obtain refinancing of the
Oakbrook mortgage.[2] 
Therefore, we conclude that in the Enforcement Order, the trial court erred by
(1) impermissibly modifying the final divorce decree, (2) determining that
Oakbrook is Michael’s separate property, (3) ordering Kimberly to vacate Oakbrook, and (4) ordering Kimberly
to sign a deed conveying to Michael all of her interest in Oakbrook.[3] 
See Tex.
Fam. Code Ann. § 9.007(a);
Shanks, 110 S.W.3d at 449.  Accordingly, we sustain Kimberly’s third and
fifth appellate issues.[4]

 

 

  

B.        Is Kimberly entitled to mandamus relief as
to the trial court’s finding that she is in contempt of court for failing to
obtain refinancing of the Oakbrook mortgage?

            

            In certain instances, a
trial court may enforce a divorce decree by contempt.  See Tex. Fam. Code Ann. § 9.012 (West 2006). 
In enforcing a divorce decree, the trial court also may render further orders,
render a money judgment, and award costs and reasonable attorney’s fees for the
enforcement action.  See Tex.
Fam. Code Ann. § 9.006 –.014.  To the extent that a trial court uses its
contempt power, this court lacks appellate jurisdiction to review the trial
court’s action, but this court may review the action in a habeas corpus
proceeding, if there is a current restraint on relator’s liberty, or in a
mandamus proceeding, if there is no such restraint.  See Rosser v. Squier,
902 S.W.2d 962, 962 (Tex. 1995); In re Evans, 130 S.W.3d 472, 487 (Tex.
App.—Houston [14th Dist.] 2004, orig. proceeding).  The trial court held
Kimberly in contempt of court based on nine violations of the divorce decree. 
Though Michael asked the trial court to punish these violations with the
criminal-contempt penalties—fines and confinement in jail—the trial court
declined to do so.   See Tex.
Gov’t Code Ann. § 21.002(b) (West 2004).  The trial court also declined
to compel obedience to the divorce decree through civil contempt.  Therefore,
we conclude that the trial court’s findings and judgment that Kimberly was in
contempt of court are contempt portions of the trial court’s order, but that
the remainder of the trial court’s order does not involve contempt and is
reviewable by appeal.  See id.  Therefore,
we conclude that Kimberly has an adequate remedy at law regarding issues two
through eight in her petition for writ of mandamus, in which she challenges
non-contempt portions of the order.  Accordingly, we overrule these issues.

            In the first issue in her
mandamus petition, Kimberly asserts that the trial court abused its discretion
by holding her in contempt for her failure to obtain refinancing of the
Oakbrook mortgage because the uncontroverted evidence established that she had
no ability to do so.  Kimberly asserts that the trial court erred in holding
her in contempt in this regard because she satisfied her burden of proving that
compliance was impossible.  An involuntary inability to comply with a court
order is a valid defense to contempt; however, Kimberly had the burden of
proving this defense.  See Ex parte Rosser, 899 S.W.2d 382, 385–87 (Tex.
App.—Houston [14th Dist.] 1995, orig. proceeding).  To sustain the first issue
in her mandamus petition, this court must conclude that Kimberly conclusively
proved in the trial court her involuntary inability to obtain refinancing of the
Oakbrook mortgage.  See id.

            At the trial in the
enforcement action, Michael testified as follows:

·       
Michael called his friend Mark, who
is a mortgage broker, and Michael asked Mark to try to help Kimberly obtain
refinancing of the Oakbrook mortgage.

·       
Michael’s friend was not able to
do anything for Kimberly in that regard.

·       
Michael is not completely familiar
with Kimberly’s past income because Kimberly did not file income tax returns.

·       
Because Michael could not get
Kimberly’s tax information, Michael filed either a head-of-household or a
married-filing-separately tax return for the last six years of his marriage to
Kimberly.

·       
Oakbrook currently is financed in
Michael’s name only with an adjustable rate mortgage with a high interest
rate.  

·       
Michael is not currently in a
position to obtain refinancing of the Oakbrook mortgage.

·       
Kimberly “can’t refinance the
house.”

 

            At the trial on the
enforcement action, Kimberly testified as follows:

·       
Kimberly thought that she did not
have to pay the mortgage on Oakbrook unless she obtained refinancing.

·       
Kimberly has not “been able to be refinanced.”

·       
Kimberly had an opportunity to
sign the deed to Pine Creek but refused to do so.  

·       
Kimberly told Michael in May 2008,
that she was attempting to obtain refinancing.

·       
Michael directed Kimberly to his
friend Mark, who tried to help Kimberly but was unsuccessful.

·       
The only income Kimberly generates
is from her recruiting business, which does not have regular income.  Her
income from this business was $20,000 in 2008 and $58,000 in 2007. 

·       
The last business tax return that Kimberly
filed was for the 2006 tax year, and Kimberly thinks the last personal tax
return she filed was for the 2004 tax year.

·       
Kimberly could not get refinanced
because (1) she owns a business, (2) she needs to apply for refinancing based
on “stated income,” (3) her debt-to-credit ratio is not good enough to apply
based on stated income, and (4) her credit was “just average.”

·       
In addition to Mark, Kimberly has
also talked to a couple of other mortgage brokers.  Mark said that he thought
Kimberly could obtain refinancing based on stated income, but the other brokers
told Kimberly “there was absolutely no way you can do stated income right
now.”  

·       
Kimberly has made numerous
attempts to refinance.

·       
There is no way that Kimberly can borrow
money to put more money down on the refinancing of the house.

·       
Kimberly does not have any family
members who could co-sign her loan.

·       
Kimberly cannot make the payments
on the current mortgage on Oakbrook.

·       
Kimberly has made three attempts
to obtain refinancing, one of which was in November 2008.  According to Kimberly,
if a person makes too many unsuccessful attempts to obtain financing then that
makes the person’s credit score even worse.

·       
One of the steps that was
suggested to Kimberly was that she start filing tax returns.  In response to
that advice, the only return that Kimberly has filed is her business tax return
for the 2006 tax year.

·       
Though in the past some lenders
accepted debtor’s statements of their income, lenders now need to see the
debtors’ tax returns before they will provide a loan.

·       
Kimberly has not filed all her tax
returns.

·       
Kimberly currently pays $1,200 per
month for stalls for her horses.  She is trying to sell the horses, which are
collateral to secure payment for the horse stalls.  

·       
The only income Kimberly is
receiving right now is child support from Michael. Kimberly has thought about
selling her business and maybe getting some other kind of employment, and she
is “looking into that at this time.”

 

            Although the record
contains evidence that Kimberly is experiencing economic difficulties, the
record also contains evidence that she refused without justification to sign
the deed to Pine Creek as ordered by the trial court.  In addition, though told
that, as part of the refinancing process, she would need to document her past
income to potential lenders through her income tax returns, Kimberly chose not
to file a business return for 2007 and not to file personal returns for at
least 2005 through 2007.  Even though the trial court ordered her to obtain
refinancing of the Oakbrook mortgage by the Refinancing Deadline, according to
her own testimony, she tried to obtain refinancing no more than two times
before this date.  Kimberly’s business was not doing well throughout 2008, and
the trial court reasonably could have concluded that Kimberly did not make
significant efforts to obtain other employment.  Kimberly proffered no expert
testimony that someone in her situation could not obtain refinancing no matter
what she might do to try to obtain it.  Nor did Kimberly submit written evidence
regarding any attempts to obtain refinancing.  She testified that she made a
total of three “attempts” to obtain refinancing and that two of these attempts
were made before the Refinancing Deadline.  But Kimberly gave no details as to
what these attempts entailed, nor did she identify any lenders from whom she
sought to obtain credit.  The trial court was free to disbelieve the testimony
that Kimberly cites as supporting her defense.  See Ex parte Rosser,
899 S.W.2d at 386.  

            On this record, we
conclude that Kimberly did not conclusively prove her involuntary inability to
obtain refinancing of the Oakbrook mortgage.  See Ex parte Sanchez, 703
S.W.2d 955, 958–59 (Tex. 1986) (rejecting involuntary inability defense to
contempt and stating “[w]hat is in dispute is whether Sanchez voluntarily put
himself in a position where it would be impossible for him to comply with the
court order”); Ex parte Rosser, 899 S.W.2d at 385–87 (holding that
ex-husband failed to conclusively prove involuntary inability to comply with
order regarding ex-wife’s visitation with their daughter); In re Corder,
No. 01-09-00004-CV, —S.W.3d—,—, 2009 WL 1025755, at *3 (Tex. App.—Houston [1st
Dist.] Apr. 10, 2009, orig. proceeding) (holding that ex-husband failed to
conclusively prove involuntary inability to comply with order regarding
child-support payments).  Accordingly, we overrule Kimberly’s first mandamus
issue and deny her mandamus petition.  

In an original proceeding regarding a
contempt order, this court will grant relief if a relator shows that the order
underlying the contempt is void, or if the relator shows that the contempt
order itself is void. See In re Johnson, No. 14-09-00775-CV, 2009 WL
4345405, at *2 (Tex. App.—Houston [14th Dist.] Dec. 3, 2009, orig. proceeding)
(mem. op.).  A contempt order may be void for various reasons, including a
showing by the relator that the evidence is legally insufficient to support a
finding beyond a reasonable doubt that the relator violated a reasonably
specific order with willful intent.  See In re Long, 984 S.W.2d 623,
626–27 (Tex. 1999) (stating that court cannot in a mandamus proceeding weigh
the evidence supporting contempt findings but that court can determine whether a
contempt judgment is void because there is no evidence of contempt); Ex parte Rosser, 899 S.W.2d
at 385 (noting that a contempt conviction for disobedience to a court order
requires proof beyond a reasonable doubt of (1) a reasonably specific order,
(2) a violation of the order, and (3) the willful intent to violate the
order).  But, the
relator bears the burden of showing entitlement to relief, and this court
presumes that the contempt order and the order underlying it are valid, unless
the relator discharges the burden of showing otherwise.  See In re Johnson,
2009 WL 4345405, at *2.  

In these proceedings,
Kimberly has not asserted or argued that the divorce decree is void or that any
of the contempt portions of the trial court’s order are void (hereinafter,
“Contempt Order”). But, Kimberly does argue that the evidence conclusively
proved her involuntary inability to comply with the trial court’s order that
she obtain refinancing of the Oakbrook mortgage, and if the evidence
conclusively proved such an inability, then the contempt finding in this regard
would be void.  See
In re Corder, 2009
WL 1025755, at *3.  As explained above, the evidence did not conclusively prove
an involuntary inability
to comply.  Because Kimberly has not asserted any other argument that would
support a determination by this court that the Contempt Order is void, any
issues in this regard are not before us.  In the case under review, we address
only issues on appeal from the Enforcement Order and the mandamus issue
regarding the defense of involuntary inability to comply.  

The trial court did not
assess any criminal-contempt penalties, nor did the trial court subject
Kimberly to civil contempt.  Nonetheless, further proceedings will be taking
place in the trial court in the future.  In this context, we emphasize that in
this opinion we do not address any other issues that might be raised as to
whether the Contempt Order is void.

Conclusion

            The trial court did not err in denying
Kimberly’s motion for clarification. However, in the Enforcement Order, the
trial court erred by (1) impermissibly modifying the final divorce decree, (2)
determining that Oakbrook is Michael’s separate property, (3) ordering Kimberly
to vacate Oakbrook, and (4) ordering Kimberly to sign a deed conveying to
Michael all of her interest in Oakbrook. Accordingly, on appeal, we reverse the
Enforcement Order and remand for further proceedings consistent with this
opinion.  The only issue regarding contempt raised in Kimberly’s mandamus
petition lacks merit.  Therefore, we deny Kimberly’s mandamus petition.

 

 

 

                                                                        /s/        Kem
Thompson Frost

                                                                                    Justice

 

Panel consists of Justices Frost, Boyce, and Sullivan. (Sullivan, J., not
participating).









[1]
Kimberly argues that the trial court’s
conditional award of Oakbrook to her is a conditional or contingent award that
makes the decree ambiguous.  Kimberly cites Cason v. Cason in support of
this proposition.  See No. 09-04-538-CV, 2005 WL 2092528, at *1 (Tex.
App.—Beaumont Aug. 31, 2005, no pet.).  The Cason court stated that a
trial court’s judgment generally should be certain and definite rather than
conditional or contingent.  See id.  The Cason court acknowledged
that some conditional or contingent awards are allowed in judgments.  See id. 
Nonetheless, the Cason court determined that the Cason trial
court’s contingent award was an abuse of discretion, which the Cason
court reversed on direct appeal.  See id.  We conclude that Cason
is not on point because it involved the issue of the propriety of a contingent
award in the context of a direct appeal from a divorce decree, rather than an
appeal from an order enforcing a final decree, which can no longer be
modified.  

 





[2]
Michael relies upon In re Kerr.  See No.
14-08-00529-CV, 2009 WL 3000977, at *1–2 (Tex. App.—Houston [14th Dist.] Sept.
22, 2009, no pet.).  However, that case is not on point because it involved an
enforcement order in which the trial court rendered a money judgment in favor
of the ex-wife for damages caused by the ex-husband’s failure to comply with
the express terms of the divorce decree.  See id; see also Tex. Fam. Code Ann § 9.010.

 





[3]
Both Kimberly and Michael cite Torres v. Sierra. 
No. 04-08-00516-CV, 2009 WL 331883, at *1–2 (Tex. App.—San Antonio Feb. 11,
2009, no pet.).  Though that case involved an award of community property to
the ex-husband conditioned on a post-decree payment by the ex-husband, it did
not involve an enforcement order that subsequently changed the characterization
of the property from community property to one party’s separate property.  See
id.  In addition, the Torres court focused on the ex-husband’s
argument that the contingent award of property to him was effective even though
he did not make the payment that was the condition precedent to this award.  See
id.  We conclude that Torres is not on point.  

 





[4] 
Having sustained these two appellate issues, we
need not and do not address Kimberly’s fourth, sixth, seventh, eighth, and
ninth appellate issues.